David F. Sugerman, OSB #862984
david@sugermanlawoffice.com
Nadia H. Dahab, OSB #125630
nadia@sugermanlawoffice.com
SUGERMAN LAW OFFICE
707 SW Washington Street, Suite 600
Portland, OR 97205
Telephone: (503) 228-6474
Facsimile: (503) 228-2556

*(Additional counsel for Plaintiff and the Putative Class listed on signature page.)*

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| JENNA GRANADOS, *on behalf of herself and all others similarly situated,*<br><br>             *Plaintiff,*<br><br>    v.<br><br>ONPOINT COMMUNITY CREDIT UNION,<br><br>             *Defendant.* | Case No. 3:21-cv-00847<br><br>CLASS ACTION COMPLAINT<br>(Electronic Funds Transfer Act;<br>Breach of Contract; Oregon Unlawful<br>Trade Practices Act; Restitution)<br><br>JURY TRIAL DEMANDED |

Plaintiff Jenna Granados, by her attorneys, brings the following Class Action Complaint on behalf of herself and all others similarly situated and alleges and complains of Defendant as follows:

## PRELIMINARY STATEMENT

1.    Jenna Granados ("Plaintiff" or "Ms. Granados") is a victim of fraud.

2.    The perpetrator, who is unknown to Plaintiff, fraudulently misrepresented himself as OnPoint Community Credit Union ("OnPoint" or "Defendant") in a phone call in a successful effort to obtain Plaintiff's debit card pin number.

3.    The perpetrator then used the pin to fraudulently charge and withdraw a total of $3,474.28 from Plaintiff's checking and savings account with OnPoint after unauthorized transfers were made between said accounts.

4.    Plaintiff promptly disputed the charges with Defendant.

5.    Despite its obligation under the EFTA to promptly credit Plaintiff's account in full, Defendant refused to credit Plaintiff's account for the stolen funds.

6.    Plaintiff brings claims against OnPoint for violations of the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C § 1693, *et seq*., which protects consumers from liability for unauthorized transfers.

7.    Specifically, as set forth herein, OnPoint's standard account agreement, its dispute resolution process, and its form correspondence violates the EFTA:  OnPoint has an overt and stated policy of denying claims involving unauthorized transactions where it maintains that the consumer's PIN, Debit Card or other access device was provided to the criminal as a result of fraud or where OnPoint views the consumer as having been insufficiently protective of his or her account information.

8.    Pursuant to the EFTA however, consumers are protected from liability where the

consumer provided an access device to a third party as a result of fraud or robbery.

9.     Moreover, a financial institution is barred under the EFTA from holding a consumer and accountholder liable for unauthorized use for any reason (including alleged accountholder negligence) that is not specifically set forth in the statute.

10.    Although Defendant's Account Agreement purports to narrow consumers' rights under the EFTA, these rights are non-waivable.

11.    Defendant also violates the EFTA by failing to provide consumers whose disputes are denied with the statutorily required notice of their right to receive all supporting documentation relied upon by Defendant to reach its decision.

12.    Plaintiff also brings a claim for breach of contract.  Specifically, in paragraph 22 of its Account Agreement, OnPoint promises that when a consumer brings an error regarding a transfer to its attention, OnPoint will (a) conduct an investigation; (b) tell the consumer the result of its investigation within ten business days; (c) in the event an error is found, it will correct any error promptly; (d) in the event no error is found, it will deliver or mail an explanation of its investigative findings within three business days after the investigation has concluded and, upon request, provide copies of documents relied upon to conclude that an error did not occur.

13.    OnPoint breaks its promises to consumers by (a) refusing to conduct an investigation whenever a consumer provided access information to a fraudster and/or (b) uniformly finding no "error" whenever a consumer provided access information to a fraudster.

14.    Plaintiff also brings claims under the Oregon Unlawful Trade Practices Act (the UTPA).  In furtherance of its scheme to deny customers account credits to which they are entitled, OnPoint issues standardized error rejection letters that knowingly misstate OnPoint's legal obligations. OnPoint also misrepresents the nature of the customer's obligations for such transfer transactions in the Account Agreement.

15.     Plaintiff also seeks restitution because OnPoint uses illegal and therefore void provisions of the Account Agreement to retain the funds that should rightly be credited to customer accounts in the event of fraud inducing a customer to provide account information.

16.     Plaintiff seeks to represent a class to remedy the harm caused by OnPoint's illegal behavior and to ensure that these practices cannot continue going forward.

## JURISDICTION AND VENUE

17.     The Court has jurisdiction pursuant to 15 U.S.C. § 1693m and 28 U.S.C. § 1331.

18.     Jurisdiction over Plaintiff's claims for declaratory relief is conferred by 28 U.S.C. § 2201.

19.     The Court also has jurisdiction pursuant to 28 U.S.C. § 1332(d) because it is brought as a class action, on behalf of a Class of over 100 Class Members, whose claims aggregate in excess of five million dollars, and which includes members whose state citizenship is diverse from that of Defendant.

20.     Supplemental jurisdiction exists for the state law claim pursuant to 28 U.S.C. § 1367 because they arise from the same set of operative facts.

21.     Venue is proper in this District because Plaintiff resides in this District, a substantial part of the events and occurrences underlying this litigation occurred within this District, and Defendant resides in this District and regularly conducts business here.

## PARTIES

22.     Plaintiff Jenna Granados is a natural person and citizen of Oregon residing in Hillsboro, Oregon.

23.     Plaintiff is a "consumer" as defined by the EFTA, 15 U.S.C. § 1693a(6).

24.     Defendant OnPoint Community Credit Union is a credit union formed under the laws of the United States and was, at all times relevant to this complaint, a financial institution as

defined by the EFTA, 15 U.S.C. § 1693a(9). It is a citizen of Oregon.

## **FACTS**

25.     On January 10, 2021, Plaintiff received a text message from a number presumably linked to Defendant which requested that the Plaintiff verify an attempted purchase at CVS.

26.     Plaintiff then received a call from a person who identified themselves as a "representative" of OnPoint's "Fraud Department."

27.     The "representative" stated that he was calling Plaintiff regarding a series of flagged charges on her account.

28.     Ms. Granados confirmed that they were unauthorized.

29.     The "representative" went on to state that he would freeze Plaintiff's debit card as a result. However, he requested her PIN number to do so.

30.     As a precautionary measure, Plaintiff researched the phone number from which the representative was calling from to see whether it matched OnPoint's phone number for the fraud department.

31.     Upon confirming that the number matched, Ms. Granados gave the "representative" her PIN number.

32.     The "representative" went on to confirm that the charges had been cancelled and proceeded to give Plaintiff a case number.

33.     Unfortunately, the "representative" was actually a criminal posing as an OnPoint employee.

34.     Using the PIN number he had obtained by fraud, the criminal proceeded to drain Plaintiff's bank account.

35.     The criminal made three fraudulent ATM withdrawals from Plaintiff's account, totaling $489.00.

36.     That same day, January 10, 2021, the criminal withdrew $1,502.64 from her account without her authorization.

37.     This theft was followed by another withdrawal that same day of $1,482.64.

38.     In total, $3,474.28 was stolen from Plaintiff.

39.     The criminal also transferred $2,000.00 from Plaintiff's savings account to her checking account so that there were funds in the checking account sufficient to cover all of the fraudulent withdrawals listed above.

40.     That same day, upon seeing the unauthorized transactions, Plaintiff called Defendant's after-hours line, reported the fraud, and was connected to an (actual) OnPoint customer service representative who assisted her in locking her card.

41.     Also on that same day, Ms. Granados called the Hillsboro Police Department's non-emergency hotline and attempted to file a police report with Officer Daniel Winter.

42.     However, Office Winter informed the Plaintiff that it was premature to file a report and suggested instead that Plaintiff talk to her bank in the morning.

43.     On January 11, 2021, Plaintiff visited OnPoint's Orenco Station Branch to file OnPoint's "Card Transaction Dispute" form and OnPoint's form "Affidavit of Forgery" regarding the theft.

44.     Plaintiff spoke with Defendant's employee, Diana Garcia, who helped Plaintiff fill out and file the forms and who took a written statement from Plaintiff regarding the theft.

45.     The dispute form listed out each disputed transaction, categorized the dispute as "ATM and POS Posted Transactions" and "Fraud/Not Authorized," and included the statement "I have not conducted business with the merchant, nor did I authorize or participate in the transactions(s) listed above."

46.     Ms. Garcia added the following statement in "Comments": "Member received a

text with area code (512) on 1/10/21 around 1:31pm.  Jenna did not reply to text, suddenly her phone rings from a different number, appearing as our own card services department. Transactions began to occur after providing card info."

47.     In the dispute form, Ms. Granados further "depose[d] and s[aid]" that "any disputed transactions were not originated with fraudulent intent by me or any person acting in concert with me."  This statement was pre-printed on the form.

48.     The affidavit—a form provided by Defendant—verified *inter alia* that "fraudulent ATM, POS or Visa transactions were posted to my account," that she "did not know who performed the fraudulent transactions" and that she "did not receive any benefit from the transactions making up this claim."  This statement was pre-printed on the form.

49.     After not hearing from Defendant for a period of time, Plaintiff called OnPoint to inquire regarding the status of her dispute.

50.     Plaintiff was informed that her dispute was indeed rejected and that a letter dated January 20, 2021 had been mailed to her regarding the rejection of her dispute.

51.     Plaintiff explained to OnPoint that she had not received the letter and Defendant then sent it to her electronically.

52.     The letter, dated January 20, 2021, notified Ms. Granados that—consistent with Defendant's policies and contract—Defendant had denied Plaintiff's dispute because she had provided her PIN to the criminal posing as one of Defendant's customer service representatives.

53.     Specifically, the letter stated:

> As indicated in our Membership and Account Agreement, you are
> responsible for the safekeeping of your access code/Personal
> Identification Number (PIN). You agree not to disclose or
> otherwise make your card and PIN available to anyone that is not
> authorized to sign on your accounts. If you permit others access to
> your card and PIN you are responsible for any transactions they
> authorize or conduct on any of your accounts.

> Based on information that you provided to us that you shared your
> PIN with another individual, we have concluded that you are
> responsible for these transactions.
>
> Due to these findings, no adjustment has been applied your
> account for your dispute.

54.     After reviewing the letter, Plaintiff travelled—on January 27, 2021—to the

OnPoint Orenco Station Branch and spoke with an OnPoint employee, Jennifer.

55.     While Plaintiff was at the branch, Jennifer called OnPoint's fraud department and

a representative from that department confirmed that Defendant would not change its decision

regarding the dispute.

56.     On January 29, 2021, Ms. Granados called the Hillsboro Police Department again

and was referred to Officer Winter.

57.     Plaintiff left Officer Winter a voicemail.

58.     On January 31, 2021, Officer Winter called Plaintiff back and assisted her in

filing a police report.

59.     Defendant's denial letter referenced Paragraph 11 of its Membership Account

Agreement ("Account Agreement") which states:

> The Card PIN's, Online and Mobile Banking Passwords and
> Telephone Teller Access Codes ("access code") are for your
> security. Your access code is confidential and should not be
> disclosed to third parties or recorded. You are responsible for
> safekeeping your access code. You agree not to disclose or
> otherwise make your access code and Internet Enabled or Mobile
> Device available to anyone not authorized by you to sign on your
> accounts. If you authorize anyone to have or use your access code
> and Internet Enabled or Mobile Device, you understand that person
> may use the Online Banking, Bill Pay or Mobile Banking service
> to access and review all of your account information and execute
> account transactions. Therefore, we are entitled to act on
> transaction instructions received using your access code and you
> agree that the use of your access code will have the same effect as
> your signature authorizing transactions. If you authorize anyone to

use your access code in any manner, that authority will be considered unlimited in amount and manner until you specifically revoke such authority by notifying the Credit Union and changing your access code immediately. You are responsible for any transactions made by such persons until you notify us that transactions and access by that person are no longer authorized and your access code is changed. If you fail to change your access code or maintain the security of your access code and the Credit Union suffers a loss, we may terminate your electronic services immediately.

60.     Paragraph 12 of the Account Agreement states:

Member Liability

You are responsible for all transfers you authorize using your EFT services under this Agreement. If you permit other persons to use an EFT service, Card or Access Code you are responsible for any transactions they authorize or conduct on any of your accounts. Tell us at once if you believe anyone has used your Account, Card or Access Code without your authority or if you believe that an electronic funds transfer has been made without your permission. Calling Member Services is the best way of keeping your possible losses down. For Visa Debit Card purchase transactions, if you notify us of your lost or stolen card, you may not be liable for any losses provided you were not grossly negligent (for example allowing any other individual access to your PIN and/or Card) or fraudulent in handling your Card and you provide us with a written statement regarding your unauthorized Card claim, otherwise the following liability limits will apply.

61.     Paragraph 22 of the Account Agreement states:

We will tell you the results of our investigation within ten (10) business days after we hear from you and will correct the error promptly. For errors related to transactions occurring within thirty (30) days after the first deposit to the account (new accounts), we will tell you the results of our investigation within twenty (20) business days. If we need more time, however, we may take up to forty-five (45) calendar days to investigate your complaint or question (ninety (90) calendar days for new account transaction errors, or errors involving transactions initiated outside the United States). If we decide to do this, we will re-credit your account within ten (10) business days (5 business days for OnPoint Community Credit Union Visa Debit Card purchase transactions) for the amount you think is in error, so that you will have the use of the money during the

time it takes us to complete our investigation. If we ask you to put your complaint or question in writing and we do not receive it within ten (10) business days, we may not re-credit your account.

If we decide after our investigation that an error did not occur, we will deliver or mail to you an explanation of our findings within three (3) business days after the conclusion of our investigation. If you request, we will provide you copies of documents (to the extent possible without violating other members' rights to privacy) relied upon to conclude that the error did not occur.

62. OnPoint did not investigate Plaintiff's claim of an error beyond a determination that Plaintiff was induced by fraud to provide access information to the fraudster.

63. OnPoint's form denial letter does not notify consumers of their right to receive all supporting documentation relied upon by Defendant to reach its decision, as required under the EFTA.

64. Consumers' rights under the EFTA are non-waivable. § 1693l.

65. OnPoint's standard, boilerplate dispute responses and its Account Agreement violate the EFTA.

66. Specifically, the EFTA places sharp limitations on consumer liability for unauthorized transactions. § 1693g.

67. Because Plaintiff did not give actual authority to the fraudster to initiate the transfers, the transactions initiated by the fraudster constituted unauthorized electronic fund transfers under § 1693a(12). *See, e.g.*, Official Interpretation of Regulation E, 12 C.F.R. § 1005.2(m)(3) ("Access device obtained through robbery or fraud. An unauthorized EFT includes a transfer initiated by a person who obtained the access device from the consumer through fraud or robbery.").

68. Pursuant to Official Interpretation of Regulation E, 12 C.F.R. § 1005.6(b)(2), "[n]egligence by the consumer cannot be used as the basis for imposing greater liability than is

permissible under Regulation E."

69.     When a financial institution such as OnPoint denies a dispute, it is required under the EFTA to promptly inform the consumer of its findings—and with this explanation—provide notice to the consumer of the consumer's right to receive, on request, "all documents which the financial institution relied on to conclude" that no billing error occurred.  § 1693f(d).

70.     By holding Plaintiff and other accountholders liable for the full amount of unauthorized transfers, rather than the limits set forth by § 1693g(a), OnPoint has violated the EFTA.

## CLASS ALLEGATIONS

71.     Plaintiff brings this claim on behalf of herself, and on behalf of all other persons similarly situated, pursuant to Fed. R. Civ. P. 23.

72.     Plaintiff asserts her claims against Defendant on behalf of herself and the Classes defined as follows:

73.     **Excess Consumer Liability Class.** All persons who:

   a.   have or had an account with OnPoint; and

   b.   notified OnPoint that they had been induced by fraud or misrepresentation to provide another person with their account access device leading to unauthorized charges;

   c.   where—within one year prior to filing of this action—OnPoint denied the dispute on grounds that the class member provided the access device to a third party; and

   d.   who notified OnPoint:

      i.   within two business of the alleged loss or theft and who alleged a loss of more than $50; or

          **ii.** at any time and who alleged a loss of more than $500.

74. **EFTA Anti-Waiver Class.** All persons who:

    a. have or had an account with OnPoint;

    b. to which the Account Agreement, including Paragraphs 11 and/or 12 of the Account Agreement as set forth herein, applied;

    c. within one year prior to filing of this action.

75. **EFTA Failure to Provide Required Notice Class.** All persons who:

    a. have or had an account with OnPoint; and

    b. notified OnPoint of any unauthorized charge or other billing error;

    c. where—within one year prior to filing of this action—OnPoint denied the dispute;

    d. and issued a form letter that did not inform the accountholder of his or her right to all supporting documentation relied upon by the financial institution in reaching its conclusion.

76. **Breach of Contract Class**. All persons who:

    a. were parties to any version of OnPoint's Account Agreement that contained Paragraph 22 as set forth herein; and

    b. notified OnPoint that they had been induced by fraud to provide another person with their account access device leading to unauthorized charges; and

    c. for whom, within six years of the filing of this action, OnPoint (a) did not conduct an investigation and/or (b) found no "error" without conducting any investigation beyond whether the class member provided account information to the fraudster.

77.     As used in the class definitions, the term "access device" means a card, code, or other means of access to a consumer's account, or any combination thereof, that may be used by the consumer to initiate electronic fund transfers, as well as any other device, information or means of access that meets the definition of "access device" pursuant to the EFTA, *see, e.g.*, § 1005.2(a)(1).

78.     Excluded from the Classes is anyone employed by counsel for Plaintiff in this action and any Judge to whom this case is assigned, as well as his or her immediate family and staff.

*Numerosity*

79.     According to OnPoint's website, "OnPoint Community Credit Union is the largest credit union in Oregon, serving more than 315,000 members."

80.     The Account Agreement alleged herein to violate consumers' EFTA rights applies, on information and belief, to all of these members.

81.     Moreover, fraud involving unauthorized electronic transfers is extraordinarily common.

82.     As alleged above, OnPoint's policy and practice, reflected in OnPoint's standardized dispute resolution correspondence and its Account Agreement, is to deny claims of unauthorized transfers if the accountholder provided the access code to the person initiating the transfer, regardless of whether the accountholder did so as the result of fraud or misrepresentation.

83.     When OnPoint does send correspondence regarding their findings concerning the error, the standardized letter does not include notice of the consumer's right to request reproductions of all documents which OnPoint relied on to conclude that such error did not occur.

84.     Thus, there are thousands of customers that are victims of Defendant's unlawful policies and practices.

85.     As such, each class is sufficiently numerous that joinder of all members is impracticable.

86.     Although the exact number of members of each class and their addresses are unknown to Plaintiff, they are readily ascertainable from Defendant's records.

*Existence and Predominance of Common Questions*

87.     Common questions of law and fact exist as to Plaintiff and all members of the Classes and predominate over questions affecting only individual members of the Classes.

88.     These common and predominant questions include:

a.  Whether Defendant has a standardized practice of denying claims of unauthorized transfers if the accountholder provided the access code to the person initiating the transfer, regardless of whether the accountholder did so as the result of fraud or misrepresentation;

b.  Whether Defendant conducts any investigation of such claims;

c.  Whether Defendant's determinations that no error occurred on the grounds that a transaction is authorized so long as the accountholder provided the access code to the person initiating the transfer—*i.e.*, regardless of whether the accountholder did so as the result of fraud or deception—are unlawful under the EFTA;

d.  Whether Defendant's Account Agreement violates the EFTA's anti-waiver provisions;

e.  Whether Defendant denies disputes without providing the statutorily required notice regarding the consumer's right to investigatory documents and, if so,

whether this violates the EFTA.

    f.   Whether Defendant's conduct in misrepresenting its obligations and concealing customers' rights violates the Oregon UTPA;

    g.   Whether paragraph 22 of Defendant's Account Agreement constitutes an enforceable promise to follow the investigative steps outlined in that paragraph;

    h.   Whether Defendant's conduct concerning investigation and notification breached paragraph 22 in the Account Agreement;

    i.   Whether paragraphs 11 and 12 of Defendant's Account Agreement violate the EFTA;

    j.   Whether paragraphs 11 and 12 of Defendant's Account Agreement are either voidable or void ab initio;

    k.   Whether Class Members are entitled to restitution of the benefit reaped by Defendant by means of paragraphs 11 and 12 of the Account Agreement;

*Typicality*

89.    Plaintiff's claims are typical of the claims of the Classes because Plaintiff is a member of the Classes and is subject to the same unlawful conduct as other members of the Classes.

90.    Thus, Plaintiff's claims—based on the same facts and legal theories as the claims of all other members of the Classes—are typical of the claims of the Classes.

*Adequacy*

91.    Plaintiff will fairly and adequately represent the interests of the members of the Classes. Her interests do not conflict with the interests of the members of the Classes she seeks to represent.

92.     Plaintiff has retained counsel experienced in prosecuting class actions and in consumer protection matters. There is no reason why Plaintiff and her counsel will not vigorously pursue this matter.

*Superiority*

93.     A class action is superior to other available means for the fair and efficient adjudication of the claims at issue.

94.     The damages suffered by each individual member of the Classes may be limited. Damages of such magnitude are small relative to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct.

95.     Further, it would be virtually impossible for each individual member of the Classes to redress the wrongs done to them. Even if the members of the Classes themselves could afford such individual litigation, the court system could not.

96.     Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and the court system presented by the complex legal and factual issues of the case.

97.     By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

98.     In the alternative, the Classes may be certified because:

    a.  the prosecution of separate actions by the individual members of the Classes would create a risk of inconsistent or varying adjudication with respect to individual members of the Classes which would establish incompatible standards of conduct for Defendant;

    b.  the prosecution of separate actions by individual members of the Classes

would create a risk of adjudications with respect to them which would, as a

practical matter, be dispositive of the interests of other members of the

Classes not parties to the adjudications or substantially impair or impede

their ability to protect their interests; and

c.  OnPoint has acted or refused to act on grounds generally applicable to the

Classes, thereby making appropriate final and injunctive relief with respect

to the members of the Class as a whole.

**<u>FIRST CLAIM FOR RELIEF</u>**
**(Electronic Fund Transfers Act, 15 U.S.C. § 1693 et seq.)**
**On behalf of Plaintiff and the Excess Consumer Liability Class**

99.     Plaintiff repeats and re-alleges each of the foregoing paragraphs of this Complaint

as if fully set forth herein.

100.    The EFTA places sharp limitations on consumer liability for unauthorized

transactions. § 1693g.

101.    Because Plaintiff did not give actual authority to the fraudster to initiate the

transfers, the transactions initiated by the fraudster constituted unauthorized electronic fund

transfers under § 1693a(12).  *See, e.g.*, Official Interpretation of the Regulation E, regarding 12

C.F.R. 1005.2(m)(3).

102.    By holding Plaintiff responsible for the full amount of the unauthorized transfers,

rather than the limits set forth by § 1693g(a), OnPoint has violated the EFTA.

103.    As a direct and proximate result of Defendant's violations of the EFTA, Plaintiff

is entitled to an award of statutory and actual damages as well as attorney's fees and costs.

104.    Because Defendant does not conduct a good faith investigation of disputes

involving third party access alleged to have been obtained by means of fraud or deception

(instead implementing the blanket policy reflected in its form correspondence and Account

Agreement), and because Defendant lacks reasonable belief for believing consumers' accounts to not be in error in such circumstances, Defendant is liable for treble damages. § 1693f(e).

105.    Because Defendant—by means of its blanket policy regarding third party access obtained by means of fraud or deception—knowingly and willfully concludes that customer accounts are not in error when such a conclusion could not reasonably be drawn from the evidence available to Defendant at the time of its investigation, Defendant is liable for treble damages. § 1693f(e).

## SECOND CLAIM FOR RELIEF
**(Electronic Fund Transfers Act, 15 U.S.C. § 1693 et seq.)**
**On behalf of Plaintiff and the Anti-Waiver Class**

106.    Plaintiff repeats and re-alleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

107.    Paragraphs 11 and 12 of Defendant's Account Agreement attempts to significantly narrow consumers' rights with regard to unauthorized use/transfers.

108.    By attempting to enforce Account Agreement provisions that limit consumers' rights beyond the limitations contained in the EFTA, Defendant has violated the EFTA. § 1693l.

109.    As a direct and proximate result of Defendant's violations of the EFTA, Plaintiff is entitled to an award of statutory damages as well as attorney's fees and costs.

## THIRD CLAIM FOR RELIEF
**(Electronic Fund Transfers Act, 15 U.S.C. § 1693 et seq.)**
**On behalf of Plaintiff and the Failure to Provide Required Notice Class**

110.    Plaintiff repeats and re-alleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

111.    Defendant's form dispute denial letter violates consumers' right to notice of the consumers' entitlement to all supporting documentation relied upon by the financial institution in reaching its decision.

112.    By issuing written dispute denials that do not inform consumers of their right to the supporting documentation relied upon by Defendant to reach its conclusion, Defendant has violated the EFTA, § 1693f(d).

113.    As reflected in the drafting of § 1693f(d), a critical part of a good faith investigation under the EFTA is providing the subject with notice of the right to examine the documents relied upon in making determinations.

114.    Defendant's failure to do so prevents accountholders like Plaintiff from learning the full basis for Defendant's decision, potentially limiting their ability to successfully resolve their dispute, pursue their full rights, obtain additional information about the allegedly unauthorized charges, and fully understand the reasons for the adverse resolution of the dispute.

115.    A consumer's right to the notice in question—*i.e.*, notice of the right to examine the documents relied upon by Defendant in making the adverse determination—is a procedural right which protects Plaintiff's concrete interests.  Violation of that right presents a "risk of real harm" to that concrete interest.

116.    As a direct and proximate result of Defendant's violations of the EFTA, Plaintiff is entitled to an award of statutory damages as well as attorney's fees and costs.

### FOURTH CLAIM FOR RELIEF
**(Breach of Contract)**
**On behalf of Plaintiff and the Breach of Contract Class**

117.    Plaintiff repeats and re-alleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

118. OnPoint's Account Agreement constitutes an enforceable contract between OnPoint and banking customers.

119. The Account Agreement provides that OnPoint will conduct an investigation and promptly report the results to the consumer.

120. By failing to follow its own promises concerning investigation and reporting to the consumer about reported errors, OnPoint also breached the Account Agreement.

121. Specifically, OnPoint materially breached the Account Agreement by refusing to conduct an investigation whenever a consumer provided access information to a fraudster and/or uniformly finding no "error" whenever a consumer provided access information to a fraudster.

122. Defendant's refusal to investigate and its subsequent finding of no error caused Plaintiff and the Class harm in the amount of the sums not credited back to their accounts as was required under the contract.

123. As a direct and proximate result of Defendant's breach of the Account Agreement, Plaintiff and members of the Class are entitled to an award of nominal and actual damages.

### FIFTH CLAIM FOR RELIEF
**(Oregon Unlawful Trade Practices Act § 646.608)**
**On behalf of Plaintiff and the Excess Consumer Liability Class**

124. Plaintiff repeats and re-alleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

125. Defendant is a "person" within the meaning of ORS 646.605(4).

126. Defendant's banking services constitute "real estate, goods or services" within the meaning of ORS 646.605(6) because, as to Plaintiffs and each Class Member, those services were obtained primarily for personal, family, or household purposes.

127.     Defendant is liable under ORS 646.638 to plaintiffs and Oregon subclass members for their violations of ORS 646.608(1)(e) and (k), which prohibit Defendant from concealing and misrepresenting the nature of its banking services and transactions.

## COUNT 1 WILLFUL VIOLATION

128.     Defendant's violations were willful in that they knew or should have known that their conduct was in violation of ORS 646.608.

129.     Plaintiff and Class Members suffered ascertainable losses as a result of the violations of ORS 646.608(1), consisting of the amounts of money that Defendant unlawfully refused to credit them.  Plaintiff and Class members are entitled to recover actual damages in amounts to be proved at trial. ORS 646.638(1) and (8). Plaintiff and Class Members are entitled to injunction requiring Defendant to cease violations of the Act. ORS 646.636. Plaintiffs are entitled to recover fees and costs. ORS 646.638.

## COUNT 2 RECKLESS OR KNOWING VIOLATION

130.     Defendant knew or acted recklessly in violating ORS 646.608.

131.     Plaintiff and Class Members suffered ascertainable losses as a result of the violations of ORS 646.608(1), consisting of the amounts of money that Defendant unlawfully refused to credit them.  Plaintiff and Class members are entitled to recover actual statutory damages of $200 per violation, in amounts to be proved at trial. ORS 646.638(1) and (8). Plaintiff and Class Members are entitled to injunction requiring Defendant to cease violations of the Act. ORS 646.636. Plaintiffs are entitled to recover fees and costs. ORS 646.638.

132.     Defendant acted with malice or has shown a reckless and outrages indifference to a highly unreasonable risk of harm and has acted with conscious indifference to the welfare of Plaintiff and Class Members. Plaintiff and Class Members are entitled to recover punitive damages in an amount to be determined at trial.

## SIXTH CLAIM FOR RELIEF
### (Restitution)
**On behalf of Plaintiff and the Excess Consumer Liability Class**

133.     Plaintiff repeats and re-alleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

134.     Paragraphs 11 and 12 of Defendant's Account Agreement are illegal or otherwise unenforceable for reasons of public policy because they violate the EFTA.

135.     Relying on those provisions, Defendant has refused to credit Plaintiff and the Class Members' accounts.

136.     As a result of the wrongful misconduct alleged above, Defendant keeps millions of dollars it owes to its customers.

137.     By depositing money in their accounts and agreeing to participate in electronic fund transfers, Plaintiff and the Class Members have conferred a benefit on Defendant.

138.     Defendant has knowledge of this benefit, as well as the wrongful circumstances under which it retained a greater portion of it than it was entitled to, and yet has voluntarily accepted and retained the benefit conferred.

139.     If Defendant were permitted to retain the funds it was legally obligated to credit to Plaintiff and the Class Members, Defendant would be unjustly enriched.

140.     Therefore, Plaintiff and the Class Members seek restitution in the amount Defendant was obligated to credit for the fraudulent withdrawals.

**WHEREFORE**, Plaintiff seeks judgment in her favor and damages against Defendant and:

A.  An order certifying this case as a class action under Fed. R. Civ. P. 23, naming Plaintiff as Class Representative, and appointing her attorneys as Class Counsel;

B.  An award of actual damages, punitive damages, treble damages, statutory damages, nominal damages, attorney's fees and costs; and

C.  An injunction to end OnPoint's unlawful practices; and

D.  Such other and further relief as may be necessary, just, and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury as to all issues so triable.

Dated:  June 3, 2021.

Respectfully submitted,

/s/ Nadia H. Dahab
David F. Sugerman, OSB #862984
Nadia H. Dahab, OSB #125630
SUGERMAN LAW OFFICE
707 SW Washington Street, Suite 600
Portland, OR 97205
T: (503) 228-6474
F: (503) 228-2556
david@sugermanlawoffice.com
nadia@sugermanlawoffice.com

Daniel A. Schlanger (*pro hac vice* forthcoming)
SCHLANGER LAW GROUP LLP
80 Broad Street, Suite 1301
New York, NY 10004
T: (212) 500-6114
F: (646) 612-7996
dschlanger@consumerprotection.net

Jennifer Rust Murray, OSB #100389
Beth E. Terrell (*pro hac vice* forthcoming)
Adrienne M. McEntee (*pro hac vice* forthcoming)
Ari Y. Brown (*pro hac vice* forthcoming)
TERRELL MARSHALL LAW GROUP, PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
T: (206) 816-6603
F: (206) 319-5450
jmurray@terrellmarshall.com
bterrell@terrellmarshall.com
amcentee@terrellmarshall.com
abrown@terrellmarshall.com

*Counsel for Plaintiff and the Putative Class*