# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **JENNA GRANADOS**, on behalf of herself and all others similarly situated,<br><br>        Plaintiff,<br><br>   v.<br><br>**ONPOINT COMMUNITY CREDIT UNION**,<br><br>        Defendant. | Case No. 3:21-cv-847-SI<br><br>**OPINION AND ORDER** |

David F. Sugerman and Nadia H. Dahab, SUGARMAN LAW OFFICE, 707 SW Washington Street, Suite 600, Portland, OR 97205; Beth E. Terrell, Jennifer Rust Murray, and Ryan Tack-Hooper, TERRELL MARSHALL LAW GROUP PLLC, 936 North 34th Street, Suite 300, Seattle, WA 98103; and Daniel A. Schlanger, SCHLANGER LAW GROUP LLP, 80 Broad Street, Suite 1301, New York, NY 10004. Of Attorneys for Plaintiff.

Kimberley Hanks McGair, FARLEIGH WADA WITT, 121 SW Morrison Street, Suite 600, Portland, OR 97204; K. Issac deVyver and Karla L. Johnson, MCGUIRE WOODS LLP, Tower Two-Sixty, 260 Forbes Avenue, Suite 1800, Pittsburgh, PA 15222; and Jeffrey Paul Ehrlich, MCGUIRE WOODS LLP, 888 16th Street, N.W., Suite 500, Washington, D.C. 20006. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

      Plaintiff Jenna Granados (Granados) brings this putative class action against Defendant

OnPoint Community Credit Union (OnPoint). Granados asserts six claims in her First Amended

Complaint (FAC). Granados alleges that OnPoint violated the federal Electronic Fund Transfers

Act (EFTA), 15 USC § 1693 *et seq.*, by: (1) refusing to reimburse Granados for funds that she

lost due to fraudulent transactions; (2) attempting to enforce contract terms that limit Granados'

consumer rights beyond what the EFTA allows; and (3) failing to notify Granados of her

statutory right to access documents that OnPoint relied on to deny the dispute. Granados also

alleges that OnPoint: (4) breached its contractual obligations by denying Granados' fraud dispute

without investigating; (5) violated Oregon's Unlawful Trade Practices Act (UTPA), Oregon

Revised Statutes § 646.608, by misrepresenting the nature of OnPoint's banking services; and (6)

was unjustly enriched by its refusal to credit Granados for her losses due to fraud. Granados

brings this sixth claim, labeled "restitution," in the alternative to her fourth claim for breach of

contract. Granados also describes four possible putative classes.

Before the Court are two motions. First, OnPoint moves to dismiss Granados' second,

fourth, fifth, and sixth claims. Second, OnPoint moves to strike the class allegations in Granados'

FAC for three of her four putative classes. For the reasons explained below, the Court grants in

part and denies in part OnPoint's motion to dismiss and denies OnPoint's motion to strike.

## STANDARDS

### A.  Motion to Dismiss

A motion to dismiss for failure to state a claim may be granted only when there is no

cognizable legal theory to support the claim or when the complaint lacks sufficient factual

allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs.,*

*Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual

allegations, the court must accept as true all well-pleaded material facts alleged in the complaint

and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-*

*Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629

F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint

"may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The court must draw all reasonable inferences from the factual allegations in favor of the plaintiff. *Newcal Indus. v. Ikon Off. Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit a plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (quotation marks omitted).

## B.  Motion to Strike Class Allegations

Under Rule 23(a) of the Federal Rule of Civil Procedure, a plaintiff seeking to certify a class must show (1) numerosity, requiring that the class is so large that joinder of all members in not practical; (2) commonality, requiring that one or more questions of law or fact are common to the class; (3) typicality, requiring that the named plaintiffs' claims are typical of the class; and (4) adequacy of representation, requiring that the class representatives will fairly and adequately protect the interests of other class members. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 980 (9th Cir. 2011). In addition to the requirements of Rule 23(a), such a plaintiff also

must satisfy at least one requirement of Rule 23(b). *Id.* at 979-80. Rule 23(b)(3) requires "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Among the pertinent factors for a court to consider are "the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(D).

Although a plaintiff has the burden of showing that a proposed class should be certified, "in the context of a motion to *strike* class allegations, in particular where such a motion is brought in advance of the close of class discovery, it is properly the defendant who must bear the burden of proving that the class is *not* certifiable." *Bates v. Bankers Life & Cas. Co.*, 993 F. Supp. 2d 1318, 1340-41 (D. Or. 2014) (emphasis in original). A court may strike class allegations at the pleading stage but abuses its discretion if it does so prematurely. *See Davidson v. O'Reilly Auto Enters.*, 968 F.3d 955, 963 (9th Cir. 2020) ("[A] district court may abuse its discretion if it unreasonably applies rules in a way that deprives a party of an opportunity to present class allegations or a motion for class certification, or denies a party reasonable opportunity to obtain a ruling on the merits of a motion for class certification." (citation omitted)); *see also Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009) (holding that "often the pleadings alone will not resolve the question of class certification and that some discovery will be warranted").

## BACKGROUND

OnPoint is a credit union that conducts business in Oregon. Granados, a resident of Oregon, was a member of OnPoint. On January 10, 2021, an unknown individual defrauded Granados into providing her OnPoint account PIN number. This individual did so by posing as an employee of OnPoint's Fraud Department and explaining that Granados' account had

"flagged" charges. Upon confirming that the purported employee's phone number matched the OnPoint Fraud Department's phone number, Granados provided her PIN number. The individual then used that PIN number to steal $3,474.28 from Granados's account in several transactions.

Granados promptly noticed these unauthorized transactions that same day. Granados called OnPoint's after-hours phone line to report these transactions as fraudulent and spoke with an OnPoint customer service representative, who then locked Granados's debit card. Granados also reported this fraud to the Hillsboro Police Department but was told that her report was premature.

The next day, January 11, Granados visited OnPoint's Orenco Station branch to file OnPoint's Card Transaction Dispute and Affidavit of Forgery forms, in which Granados indicated that the disputed transactions were fraudulent and unauthorized. Granados also spoke with an OnPoint employee, who helped Granados file these forms and took a written statement from Granados about the fraudulent transactions.

Granados later called OnPoint to ask about her dispute. An OnPoint representative told Granados that OnPoint had denied Granados' claim and mailed a letter, dated January 20, detailing OnPoint's rejection. Granados had not yet received that letter, but it arrived shortly after. In the letter, OnPoint informed Granados that OnPoint denied her claim because Granados had provided her PIN to a third party, thereby, as OnPoint explained, "authorizing" the transactions and voiding OnPoint's obligation to credit Granados for the disputed amount. The letter also stated that OnPoint's Membership and Account Agreement (Account Agreement) included these policies. The letter did not mention that Granados could request all supporting documentation that OnPoint relied on to reach its decision in the dispute. Granados states that OnPoint did not investigate the circumstances of her disputed transactions. Instead, Granados

asserts, OnPoint merely issued a "boilerplate" rejection of her dispute based only on the fact that she had provided her PIN number to a third party, despite being induced to do so by fraud.

On January 27, after reviewing OnPoint's rejection letter, Granados returned to OnPoint's Orenco Station branch and spoke with an OnPoint employee, who confirmed that OnPoint would not change its decision. Granados then filed a police report on January 31.

## DISCUSSION

### A. Motion to Dismiss

#### 1. EFTA Waiver-of-Rights Violation

Granados alleges that OnPoint violated the EFTA by refusing to credit Granados for her stolen funds (her first claim) and by maintaining a policy contrary to the EFTA (her second claim). Both claims relate to paragraphs 11 and 12 of OnPoint's Account Agreement. Paragraph 11 of the Account Agreement states that customers are responsible for safekeeping their "access codes" (PIN numbers and passwords), that OnPoint treats the use of a customer's access code as equivalent to that customer's signature authorizing a transaction, and that customers are responsible for transactions made by third parties authorized by a user's access code. The next provision in the Account Agreement, paragraph 12, reiterates that customers are responsible for transfers they "authorize" by permitting the use of their access codes. Paragraph 12 also states that customers might not be liable for transfers that occurred without permission, but notes that allowing a third party to obtain an access code could be considered "grossly negligent" and thus unprotected. OnPoint does not move to dismiss Granados' first claim.

As noted, in her second claim, Granados alleges that OnPoint violated the EFTA by simply including paragraphs 11 and 12 in the Account Agreement. Granados asserts that in so doing, OnPoint violated the provision of the EFTA that prohibits the waiver of any right that it protects. 15 USC § 1693*l* ("No writing or other agreement between a consumer and any other

person may contain any provision which constitutes a waiver of any right conferred or cause of action created by this subchapter."). OnPoint moves to dismiss Granados' second claim, arguing that she lacks standing because she has not alleged that she has suffered any concrete injury caused by OnPoint including these paragraphs in its Account Agreement.

To establish Article III standing, a plaintiff must have a "personal interest . . . at the commencement of the litigation." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). This personal interest must satisfy three elements throughout the litigation: (1) an injury in fact, i.e., an invasion of a legally protected interest that is concrete and particularized, as well as actual or imminent; (2) a causal connection between the injury-in-fact and the defendant's challenged behavior; and (3) likelihood that the injury-in-fact will be redressed by a favorable ruling. *Id.* at 180-81, 189; *see also Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (*Spokeo I*) (reiterating that the "irreducible constitutional minimum" of standing consists of "an injury in fact . . . fairly traceable to the challenged conduct of the defendant, and . . . likely to be redressed by a favorable judicial decision").

An injury in fact need not be tangible to be concrete. Intangible harms, like injuries to one's privacy or reputation, can be concrete. *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021). The Supreme Court in *TransUnion* also recently held that "Congress's creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III." *Id.* at 2205. The Supreme Court explained:

> For standing purposes, therefore, an important difference exists
> between (i) a plaintiff's statutory cause of action to sue a defendant
> over the defendant's violation of federal law, and (ii) a plaintiff's
> suffering concrete harm because of the defendant's violation of
> federal law. Congress may enact legal prohibitions and obligations.
> And Congress may create causes of action for plaintiffs to sue

PAGE 7 – OPINION AND ORDER

> defendants who violate those legal prohibitions or obligations. But
> under Article III, an injury in law is not an injury in fact. Only
> those plaintiffs who have been *concretely harmed* by a defendant's
> statutory violation may sue that private defendant over that
> violation in federal court.

*Id.* (emphasis in original). The Supreme Court held that the *TransUnion* class members lacked

standing to sue for misleading information contained in their credit files, which violated the Fair

Credit Reporting Act (FCRA), because they had not shown concrete injury caused by that

violation. *Id*. at 2210, 2212.

The Ninth Circuit addressed a similar standing issue in *Tailford v. Experian Information

Solutions, Inc.*, 26 F.4th 1092 (9th Cir. 2022). In *Tailford*, the Ninth Circuit discussed the

framework for analyzing whether alleged violations under FCRA are sufficiently concrete to

confer standing, including considering the purpose of the statutory provision at issue and whether

the plaintiff actually was harmed. *Id.* at 1099. The Ninth Circuit explained that the plaintiffs'

complaint contained sufficient allegations of non-disclosure of information to present a material

risk of harm because the "[p]laintiffs had no knowledge of or opportunity to disagree with the

provision of their [personal identifiable information] to third parties." *Id.* at 1100; *see also Kelly

v. RealPage Inc.*, 47 F.4th 202, 213-14 (3d Cir. 2022) ("In the wake of *TransUnion*, other Courts

of Appeals have likewise concluded that deprivation of information to which one is legally

entitled constitutes a sufficiently concrete informational injury when that omission causes

adverse effects and the information has some relevance to an interest of the litigant that the

statute was intended to protect." (cleaned up)).

OnPoint asserts that Granados lacks standing because she fails to allege any concrete

injury caused by OnPoint's Account Agreement containing the allegedly unlawful statements.[1]

---

[1] OnPoint relies on *Guarnieri v. Be Money, Inc.* in making this argument. 2022
WL 11381916 (C.D. Cal. Oct. 18, 2022). The court in *Guarnieri*, however, found that the

At oral argument, Granados stated that she has standing for her second claim because "she has been deprived of information . . . that Congress and the regulators want her to have so she can make informed decisions," citing *Tailford*.[2] ECF 48 at 32 (Tr. 32:1-7).

As discussed in *Spokeo I* and reiterated in *Robins v. Spokeo, Inc.*, 867 F.3d 1108 (9th Cir. 2017) (*Spokeo II*), "the mere fact that Congress said a consumer like [the plaintiff] may bring such a suit does not mean that a federal court necessarily has the power to hear it." *Spokeo II*, 867 F.3d at 1112. In holding that the *Spokeo II* plaintiff had standing, the Ninth Circuit emphasized that the inaccuracies in the credit report at issue had already been published to the internet and that they were of a type likely enough to cause harm to the plaintiff's employment prospects at a time when he was unemployed and actively looking for work. *Id.* at 1116-17.

Granados, however, has alleged no such concrete harm resulting from the Account Agreement's purported unlawful waiver of rights guaranteed by the EFTA. As in *TransUnion*, Granados has not alleged any ways in which OnPoint's misinformation affected her. An allegation that Granados made a harmful decision about her finances based on misrepresentations in OnPoint's Account Agreement might suffice for standing, for example, but Granados' complaint contains no such allegation. Moreover, her reference to *Tailford* fails for the same

---

plaintiff failed to allege "independent harm" sufficient for standing only because the plaintiff also failed to plead "an adequately alleged 'unauthorized' transaction." *Id.* at *8. That is not the case here. In fact, the *Guarnieri* court appears to contemplate the opposite of OnPoint's argument—that *had* the plaintiff properly alleged that an unauthorized transfer or inadequate investigate occurred, the purported failures of the defendant to provide notice of its investigation's results *could* qualify as concrete harm. *Id.*

[2] Granados initially argued that OnPoint referenced the Account Agreement in denying her dispute. It is unclear how Granados' loss of funds could serve as an injury for this claim because it would then merge with her first claim. Because Granados provided a different explanation of her injury at oral argument, the Court need not consider her initial framing.

reason: Granados alleges no "purported harm *actually caused* by the specific violation," *Kelly*,

47 F.4th at 213 (citing *Tailford*, 26 F.4th at 1100) (emphasis added), only that Congress intended

to protect her right to receive certain information. She thus lacks Article III standing for her

second claim. The Court dismisses Granados' second claim.

### 2.  Breach of Contract

Granados alleges in her fourth claim that OnPoint breached its Account Agreement by

failing to investigate Granados' fraud dispute. Instead, alleges Granados, OnPoint found "no

error" in Granados' report and refused to credit her account for the sum of the disputed

withdrawals as required by the EFTA. OnPoint moves to dismiss this claim, arguing that

Granados identifies no provisions of the Account Agreement that OnPoint allegedly breached.

OnPoint also contends that Granados "conceded" in her FAC that OnPoint did investigate the

dispute.

"To state a claim for breach of contract, plaintiff must allege the existence of a contract,

its relevant terms, plaintiff's full performance and lack of breach[,] and defendant's breach

resulting in damage to plaintiff." *Moyer v. Columbia State Bank*, 316 Or. App. 393, 402-03

(2021), *rev. den.* 369 Or. 705 (2022) (quoting *Slover v. Or. State Bd. of Clinical Soc. Workers*,

144 Or. App. 565, 570 (1996)) (quotation marks omitted, alteration in *Moyer*). "A claim will

survive a motion to dismiss if the complaint contains even vague allegations of all material

facts." *Slover*, 144 Or. App. at 571 (quotation marks omitted). Neither party disputes that

OnPoint's Account Agreement is a contract among the parties.

In the FAC, Granados cites and reproduces paragraph 22 of the Account Agreement as

the relevant contractual provision that OnPoint allegedly breached. It states, in relevant part:

> We will tell you the results of our investigation within ten (10)
> business days after we hear from you and will correct the error
> promptly. . . . If we need more time, however, we may take up to

> forty-five (45) calendar days to investigate your complaint or
> question . . .
>
> If we decide after our investigation that an error did not occur, we
> will deliver or mail to you an explanation of our findings within
> three (3) business days after the conclusion of our investigation. If
> you request, we will provide you copies of documents (to the
> extent possible without violating other members' rights to privacy)
> relied upon to conclude that the error did not occur.

ECF 34 at 10-11 (FAC ¶ 61).

OnPoint first argues that its Account Agreement does not include a promise to investigate. The plain language of the Account Agreement, however, suggests otherwise. The Account Agreement does not use conditional "if" language. Rather, the Account Agreement states that OnPoint "will" provide the results of its investigation, "will" explain its findings, and "will" provide documentation in support of those findings upon request. These terms imply that OnPoint at least impliedly promised that it "will" conduct an investigation.

OnPoint next contends that paragraph 22 of the Account Agreement does not promise any specific level or type of investigation. Granados' claim does not rely on any allegations about what sort of investigation OnPoint had to carry out, however. Granados only asserts that OnPoint had to investigate but did not do so. "Every contract contains an implied covenant of good faith and fair dealing, one that serves to protect the objectively reasonable contractual expectations of the parties." *Zygar v. Johnson*, 169 Or. App. 638, 645 (2000). Given the text of the contract, it would be objectively reasonable for Granados to expect that OnPoint is contractually obligated to perform a legitimate investigation, not a perfunctory one.

Finally, OnPoint asserts that Granados concedes an investigation did occur. OnPoint bases this argument on an allegation in the FAC that "OnPoint did not investigate Plaintiff's claim of an error *beyond a determination* that Plaintiff was induced by fraud to provide access information to the fraudster." ECF 34 at 11 (FAC ¶ 62). Reading these few words as a

concession that OnPoint did reasonably investigate Granados' dispute would be unwarranted. The Court denies OnPoint's motion to dismiss Granados' fourth claim alleging breach of contract.

### 3.  UTPA Misrepresentation Violation

In her fifth claim, Granados alleges that OnPoint violated the UTPA by issuing a standard rejection letter that misstated OnPoint's legal obligations and Granados' customer responsibilities.[3] OnPoint argues that Granados does not allege when, where, or how OnPoint's purported misrepresentations occurred, and that Granados does not allege that she relied on any misrepresentation to her detriment. OnPoint thus contends that Granados' allegations fall short of the specificity required for fraud claims under Rule 9(b) of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state *with particularity* the circumstances constituting fraud or mistake." (emphasis added)).

The parties dispute whether the particularity requirement in Rule 9(b) applies to Granados' UTPA claim. The applicability of Rule 9(b) depends on whether Granados' UTPA claim is "grounded in fraud." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003) ("In cases where fraud is not a necessary element of a claim, a plaintiff may choose nonetheless to allege in the complaint that the defendant has engaged in fraudulent conduct. In some cases, the plaintiff may allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of a claim. In that event, the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the

---

[3] The UTPA prohibits someone "in the course of [their] business" from representing "that real estate goods or services have . . . characteristics, ingredients, uses, benefits, quantities or qualities that [they] do not have." Or. Rev. Stat. § 646.608(1)(e). The UTPA also prohibits people from making "false or misleading representations concerning credit availability or the nature of the transaction or obligation incurred." Or. Rev. Stat. § 646.608(1)(k).

particularity requirement of Rule 9(b).”). Federal courts have applied Rule 9(b) to state law unfair trade practices claims and other claims under similar statutes. *See, e.g., Martell v. General Motors LLC*, 492 F. Supp. 3d 1131, 1145-46 (D. Or. 2020) (applying Rule 9(b) to UTPA in Oregon); *Kearney v. Equilon Enters., LLC*, 65 F. Supp. 3d 1033, 1041-43 (D. Or. 2014) (the same); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (applying Rule 9(b) to California's consumer protection statutes); *see also In re Premera Blue Cross Customer Data Sec. Breach Litig.*, 198 F. Supp. 3d 1183, 1192 (D. Or. 2016) (discussing how “Rule 9(b) applies to all allegations, or averments, of fraud in all civil cases in federal court, even when fraud is not an essential element of the claim”).

Thus, the particularity requirement of Rule 9(b) applies to Granados' UTPA claim. Granados alleges that OnPoint concealed and misrepresented the nature of its banking services and transactions, as well as its legal obligations to its customers. UTPA claims are not inherently fraud claims. *See State ex rel. Rosenblum v. Living Essentials, LLC*, 313 Or. App. 176, 195-96 (2021) (distinguishing UTPA from fraud claims); *see also State ex rel. Redden v. Discount Fabrics*, 289 Or. 375, 384-85 (1980) (“A review of the UTPA reveals that not all of these elements [of common law fraud] are required in order to recover under the act.”); *Wolverton v. Stanwood*, 278 Or. 709, 713 (1977) (“The elements of common law fraud are distinct and separate from the elements of a cause of action under the Unlawful Trade Practices Act and a violation of the act is much more easily shown.”). UTPA claims based on allegations of misrepresentation, however, “sound in fraud” for the purposes of pleading standards in federal court, and so must satisfy the particularity requirement of Rule 9(b). Granados therefore must allege facts with particularity to put OnPoint on greater notice of Granados' UTPA violation

claim (her fourth claim) that alleges misrepresentation. The Court dismisses Granados' fifth

claim, alleging a violation of the UTPA.

### 4. Restitution

In her sixth claim, seeking restitution, Granados alleges that OnPoint wrongfully relies on

paragraphs 11 and 12 of its Account Agreement to retain funds that its customers are entitled to

under the EFTA. OnPoint moves to dismiss this claim because such claims do not exist under

Oregon common law. OnPoint also argues that if Granados means to assert an equitable claim

for unjust enrichment, she fails to do so because a written contract governs the parties' conduct.

OnPoint contends that Granados thus cannot state an implied contract claim when an explicit

contract exists. Granados responds that she properly has pleaded a quasi-contract claim of

restitution in the alternative to her breach of contract claim.

The existence of a valid, enforceable contract prevents a plaintiff from succeeding on a

restitution or unjust enrichment claim. *See Gillett v. Tucker*, 317 Or. App. 570, 582 (2022); *see

also Ken Hood Constr. Co. v. Pac. Coast Constr., Inc.*, 203 Or. App. 768, 772, *rev. den.*, 341

Or. 366 (2006) ("When pleaded in the alternative, however, the two theories [of contract and

quasi-contract] are mutually exclusive: It is well established that there cannot be a valid, legally

enforceable contract and an implied contract covering the same conduct." (quotation marks

omitted)); *see generally Larisa's Home Care, LLC v. Nichols-Shields*, 362 Or. 115, 124-132

(2017) (discussing the history and development of restitution and unjust enrichment claims

broadly and in Oregon). A plaintiff typically may plead a quasi-contract claim in the alternative

to a contract claim. *See Kashmir Corp. v. Patterson*, 43 Or. App. 45, 48 (1979), *aff'd*, 289 Or.

589 (1980) ("Such alternative pleading may be beneficial to the pleader in the situation where it

is faced with a contract which may be void . . ."). When a contract's validity is not in question,

however, quasi-contractual claims are properly stricken. *Id.* at 48-49 ("In the present situation the

contract was pleaded and was incorporated in plaintiff's complaint. Defendants admitted the contract in their answer. The enforceability of the contract was not in dispute. At that time the action became one in contract."); *see also Kashmir*, 289 Or. at 593-94 (affirming that "the trial court correctly struck the quantum meruit [quasi-contract] count" when the defendants confirmed that "the validity and enforceability of the contract were no longer in issue").

In its motion to dismiss, OnPoint does not dispute the validity and enforceability of its Account Agreement contact with Granados. OnPoint also "admits that its Membership and Account Agreement governs the deposit accounts held by its members, among other things." ECF 13 at 5 (Def's. Answer ¶ 42). At oral argument, the Court noted that the parties agreed that a valid and binding contract governs their dispute. Because the Account Agreement is a valid and binding contract, a claim for restitution is not available. *See Porter Constr. Co. v. Berry*, 136 Or. 80, 84-85 (1931) ("[T]here can be no implied contract where there is an express contract between the parties in reference to the subject-matter"). The Court dismisses Granados' sixth claim, seeking restitution.

## B. Motion to Strike

Granados asserts various claims on behalf of herself and four putative classes. OnPoint moves to strike allegations in support of three of these four putative classes under Rule 23 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 23(d)(1)(D) (granting courts the discretion to "require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly").

Class allegations may be stricken at the pleading stage. *See Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 212 (9th Cir. 1975). Such motions are generally disfavored, however, "because a motion for class certification is a more appropriate vehicle for testing the validity of class claims." *Ott v. Mortg. Invs. Corp. of Ohio, Inc.*, 65 F. Supp. 3d 1046, 1062 (D. Or. 2014)

(quotation marks omitted). The granting of such motions "has happened only in those limited circumstances when the class definition is obviously defective in some way." *Id.* (quotation marks omitted); *see also Cahill v. Nike, Inc.*, 2019 WL 2179575, at *4 (D. Or. Feb. 26, 2019), *findings and recommendation adopted*, 2019 WL 2176916 (D. Or. May 16, 2019) (discussing standards for striking class claims before discovery). "Courts in this circuit repeatedly have denied motions to strike class allegations prior to discovery as premature." *Mattson v. New Penn Fin., LLC*, 2018 WL 6735088, at *2-3 (D. Or. Nov. 6, 2018) (examining cases at length), *findings and recommendation adopted*, 2019 WL 123870 (D. Or. Jan. 4, 2019).

Granados' class definitions are not "obviously defective in some way." *Ott*, 65 F. Supp. 3d at 1062. Striking her classes at this stage, therefore, would be premature. A motion for class certification is the proper procedural context to resolve OnPoint's arguments. The Court denies without prejudice OnPoint's motion to strike.

## CONCLUSION

The Court GRANTS IN PART and DENIES IN PART OnPoint's motion to dismiss, and dismisses Granados' second, fifth, and sixth claims for relief. ECF 35. The Court DENIES OnPoint's motion to strike Granados' class allegations. ECF 35.

**IT IS SO ORDERED**.

DATED this 18th day of May, 2023.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge