**David F. Sugerman**, OSB No. 862984
**Nadia H. Dahab**, OSB No. 125630
SUGERMAN DAHAB
101 SW Main Street Ste. 910
Portland, OR  97204
Tel: (503) 228-6474
david@sugermandahab.com
nadia@sugermandahab.com

*Attorneys for Plaintiff*

*[Additional counsel on signature page.]*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| JENNA GRANADOS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ONPOINT COMMUNITY CREDIT UNION,<br><br>Defendant. | Case No. 3:21-cv-00847-SI<br><br>**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Hearing: June 10, 2025, at 1:30 p.m. |

# INTRODUCTION

The proposed settlement in this case certifies a class of some 328 members of credit union OnPoint who reported to OnPoint that they lost money as a result of fraudulent electronic transactions and who were not reimbursed for those losses. Plaintiff Jenna Granados alleges that OnPoint's policies and practices violated the Electronic Funds Transfer Act (EFTA), 15 U.S.C. §§ 1693–1693r. Specifically, Plaintiff alleges that OnPoint failed to investigate losses, failed to cover its members' losses, and claimed that it had no obligation to cover such losses. Plaintiff also alleges that OnPoint breached its contract with its customers. OnPoint denies all of these allegations.

The parties have successfully negotiated a class-wide settlement that provides monetary recovery for all class members in the form of an automatic payment of more than 95 percent of their actual damages under the EFTA. The settlement provides for a service award to Plaintiff and $20,000 in notice and administration costs. Attorneys' fees and litigation expenses were negotiated separately. The amount of any award of attorneys' fees, costs, and litigation expenses will not reduce the class's excellent recovery in any way.

On December 5, 2024, this Court entered an order granting preliminary approval of the proposed settlement, finding that the parties' settlement was fair, reasonable, and adequate, and finding that the prerequisites for a class action have been satisfied. ECF 90. The Court's order further directed the parties to provide notice to the Class. ECF 90.

Since that time, the notice program has been successfully completed, reaching more than 93 percent of the class. *See* Declaration of American Legal Claim Services Regarding Due Diligence in Noticing ("ALCS Decl."), ECF 96, at ¶¶ 4–11. No objections or requests for exclusion have been received, and the deadline for doing so has passed. ALCS Decl. at ¶¶ 8–9.

Page 2 - PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

The Settlement Administrator, American Legal Claims Services, LLC (ALCS) has successfully fulfilled its obligations to provide notice to the class and has concluded that 93.6 percent of the class received direct postcard notice. ALCS Decl. at ¶ 7.

By this motion, Plaintiff respectfully requests that this Court enter an order granting final approval of the proposed settlement.

## BACKGROUND

Plaintiff incorporates herein by reference the detailed history of this litigation as set forth in Plaintiff's Motion for Preliminary Approval of Amended Class Settlement, submitted on November 19, 2024 (ECF 88), and Plaintiff's Motion for Attorneys' Fees, Costs, and Service Award, submitted on February 18, 2025 (ECF 91).

The settlement in this matter is set forth in the settlement agreement and exhibits attached thereto, filed with the Court as ECF 89-1 (attached as Exhibit A to the Declaration of Nadia H. Dahab ("Dahab Decl."), ECF 89). The agreement provides for substantial monetary compensation to class members without the need to make a claim. It also provides for a service payment to Plaintiff Granados for the substantial time and effort undertaken as class representative; for the payment of the costs of class notice and administration of the settlement; and for payment of class counsel's attorneys' fees, costs, and expenses without impacting the class members' recovery.

Pursuant to the settlement agreement, class counsel retained ALCS to serve as the settlement administrator. ALCS has successfully fulfilled its obligations to provide notice by sending direct postcard notices to all class members and establishing the settlement website (www.granadosEFTAsettlement.com). *See generally* ALCS Decl., ECF 96. Out of 328 class members to whom notice was directed, notice was delivered to 307, with only 21 notices deemed

Page 3 - PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

undeliverable. ALCS Decl. ¶ 7. Direct notice has therefore been provided to 93.6 percent of the settlement class. ALCS Decl. ¶ 7. The deadline to object or opt out of the settlement was April 7, 2025; no objections or exclusion requests have been received. ALCS Decl. ¶¶ 8, 9.

## ARGUMENT

When the Court certified a class in this matter, it preliminarily found that Plaintiff and class counsel had satisfied the requirements of Federal Rules of Civil Procedure ("Rule") 23(a) and 23(b)(3). ECF 90, at 4–5. It further made the preliminary finding that the class settlement is fair, reasonable, and adequate, and that the form, substance, and requirements of the notice the parties proposed met the requirements of Rule 23. ECF 90, at 3–4, 6–8. Pursuant to this Court's preliminary approval order, notice was sent to the class. ALCS Decl. ¶¶ 3–7.

The Court's preliminary findings may be incorporated by reference at this stage. At the final approval stage, the Court must determine whether the settlement class received appropriate notice and whether the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2); *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (describing the three-stage settlement approval process).

This Court has broad discretion to approve or reject a proposed settlement. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 942, 944 (9th Cir. 2015) (noting standard of review is "clear abuse of discretion" and emphasizing appellate court's review is "extremely limited"). When considering a motion for final approval of a class action settlement under Rule 23, the question is whether the settlement is "fundamentally fair." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1988). A settlement merits final approval when "the interests of the class as a whole are better served by the settlement than by further litigation." *Manual for Complex Litigation (Fourth)* § 21.61 (2015).

Page 4 - PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

I.   **The settlement should be approved as fair, reasonable, and adequate.**

To approve a class action settlement, a court must find that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.,* 516 F.3d 1096, 1100 (9th Cir. 2008)).

When evaluating a proposed class settlement, courts consider (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement. *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (citing *Churchill Village*, 361 F.3d at 575); *see also Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (same).

In addition to those factors, Rule 23(e) requires courts to consider: (A) whether the class representatives and class counsel have adequately represented the class; (B) whether the proposal was negotiated at arms' length; (C) whether the relief provided for the class is adequate, taking into account: the costs, risks, and delay of trial and appeal; the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; the terms of any proposed award of attorneys' fees, including timing of payment; and any agreement required to be identified under Rule 23(e)(3); and (D) whether the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2); *see also Magallon v. Robert Half Int'l Inc. (Magallon I)*, No. 6:13-cv-01478-SI, 2025 WL 1424248, at *3 (D. Or. May 7, 2025) ("[C]ourts in the Ninth Circuit 'put a good deal of stock in the product of an arms-

length, non-collusive, negotiated resolution.' " (quoting *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009)).

Despite this "lengthy but non-exhaustive list of factors that a district court may consider when weighing a proposed settlement," "there are few, if any hard-and-fast rules about what makes a settlement 'fair' or 'reasonable.' " *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 895 F.3d 597, 610 (9th Cir. 2018). "The district court's task in reviewing a settlement is to make sure it is 'not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.' " *Id.* at 617 (quoting *Officers for Justice v. Civil Serv. Comm'n of City and Cnty. of San Fran.*, 688 F.2d 615, 625 (9th Cir. 1982)). "Deciding whether a settlement is fair is ultimately 'an amalgam of delicate balancing, gross approximations and rough justice,' best left to the district judge, who has or can develop a firsthand grasp of the claims, the class, the evidence, and the course of the proceedings—the whole gestalt of the case. Accordingly, 'the decision to approve or reject a settlement is committed to the sound discretion of the trial judge.' " *Id.* at 611 (citations omitted). There is, however, a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'" *Magallon I*, 2025 WL 1324248, at *3 (quoting *In re Hyundai & Kia Fuel Economy Litig.*, 926 F.3d 539, 556 (9th Cir. 2019)).

Consideration of the relevant factors and "the whole gestalt of [this] case" confirms that the parties' proposed settlement is fair, reasonable, and adequate.

### A.   The litigation strategy factors favor approval.

This Court generally has begun its analysis of final approval "by analyzing the litigation strategy focused factors—the strength of [the plaintiff's] case; the risk, expense, complexity, and

likely duration of future litigation; and the risk of maintaining class action status through trial." *Magallon I*, 2025 WL 1324248, at *3; *see also In re Portland Gen. Elec. Sec. Litig.*, No. 3:20-cv-1583-SI, 2022 WL 844077, at *7 (Mar. 22, 2022); *Brinkmann v. ABM Onsite Servs.–West, Inc.*, No. 3:17-cv-0275-SI, 2021 WL 3932040, at *11 (D. Or. Sept. 2, 2011). Those factors favor approval here. The litigation likely would continue for many more years, and further delay is detrimental to the interests of the class members. There is also significant risk to class recovery—including at class certification, summary judgment, trial, and appeal—particularly given that EFTA law is not well-settled. Of course, even if it were, the U.S. Supreme Court has shown some willingness to upend settled law, particularly in the class action context. In short, there are many ways in which Plaintiff Granados could lose, and, compounding that risk, there are many open legal issues affecting liability, defenses, and damages that present a high risk on appeal.

Beyond that, the additional expense of litigation also supports approval. If this litigation were to continue, the expense of doing so would be significant—the parties would need to litigate additional complex motions (including class certification and summary judgment) and would potentially face the expense of trial and, quite possibly, appeal. As this Court as explained, the "high cost, the risk to the parties, and the added burden on the judiciary without a settlement" generally favor approval. *See Brinkmann*, 2021 WL 3932040, at *11.

**B.    The amount of the class settlement favors approval.**

"In considering the potential fairness of the recovery, courts often compare the total amount of recovery in a settlement to the estimated total amount of damages that could be recovered if the case was litigated." *Id.* (citing *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000)). In this case, the amount of the class settlement—$500,000—is an

Page 7 - PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

outstanding result for class members, who were otherwise unlikely to obtain recovery of the value of the unauthorized charges to their OnPoint accounts. According to class counsel's calculations, the maximum actual class damages in this case totaled $512,225.00. Declaration of Blythe H. Chandler ("Chandler Decl."), ECF 86-2, ¶ 4. Thus, the amount that class members will recover through the parties' proposed settlement is more than 95 percent of their actual damages. Recovery of over 95 percent of these funds represents substantial relief for consumers who were harmed by OnPoint's rejection of members' disputes.[1]

Additionally, funds that remain initially undistributed will be added to the class fund for a second distribution; any funds remaining after the second distribution will pass by *cy pres* to Oregon Legal Aid through the Oregon State Bar. Dahab Decl., ECF 89, Ex. A, § 5. There is no evidence of collusion. Plaintiff submits that the amount of the settlement is adequate and supports approval.

### C. The extent of discovery completed favors approval.

"Approval of a class action settlement is proper as long as discovery allowed the parties to form a clear view of the strengths and weaknesses of their cases." *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 454 (E.D. Cal. 2013).; *see also Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239–40 (9th Cir. 1998) (formal discovery not required for approval of a class

---

[1] Class members' recoveries in this case equal or exceed similar settlements approved by other courts. *See, e.g.*, *Magallon I*, 2025 WL 1324248, at *3 (approving settlement that awarded $955.95 to each settlement class members, where available statutory damages were $1000); *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 833 (N.D. Cal. 2017) (approving settlement of consumer class action that provided 42 percent of the average total potential recovery and injunctive relief); *Cavnar v. BounceBack, Inc.*, No. 2:45-CV-235-RMP, ECF 154 (E.D. Wash. Sept. 15, 2015) (approving settlement providing 15.6 percent of alleged unlawful collection fees paid by class members alleging FDCPA and Consumer Protection Act violations); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 459 (affirming the district court's approval of a settlement estimated to be worth between 1/6 and 1/2 of class members' estimated loss).

Page 8 - PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

action settlement). In this case, the parties negotiated the proposed settlement after years of litigation, with one dispositive motion, production and review of substantial amounts of discovery, and half a dozen depositions. Chandler Decl., ECF 86-1, ¶ 4–8. OnPoint produced thousands of pages of documentary discovery, including account-level information pertaining to all of the class members. Second Declaration of Blythe H. Chandler ("Second Chandler Decl."), ECF 94, ¶¶ 34, 35. Based on that discovery, the parties gained a thorough understanding of the strengths and weaknesses of their evidence, witnesses, and legal positions. This factor favors approval.

> **D.    The experience and views of class counsel support approval.**

"Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). But "[w]hile counsel's views are instructive, they do not entitle the settlement to a presumption of fairness." *Brinkmann*, 2021 WL 3932040, at *12 (citing *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049 (9th Cir. 2019)).

Class counsel in this case, who have substantial experience in litigation, trial, and appeal of consumer class actions, including the EFTA, strongly support the settlement. Chandler Decl., ECF 86-1, ¶ 4–8; Sugerman Decl. ¶ 3–10, 20; *see also Hanlon*, 510 F.3d at 1026 ("the extent of discovery completed and the stage of the proceedings" as well as "the experience and views of counsel" are relevant to approval of settlement); *see also Slezak v. City of Palo Alto*, No. 16-cv-3224-LHK, 2017 WL 2688224, at *4 (N.D. Cal. June 22, 2017) ("So long as the parties have 'sufficient information to make an informed decision about settlement,' this factor will weigh in favor of approval." (quoting *Linney*, 151 F.3d at 1239)). This factor also favors approval.

Page 9 - PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

### E. The presence of a government participant supports approval.

The Class Action Fairness Act (CAFA) provides, in relevant part,

> Not later than 10 days after a proposed settlement of a class action is filed in court, each defendant . . . shall serve upon the appropriate State official of each State in which a class member resides and the appropriate Federal official, a notice of the proposed settlement[.]
>
> * * *
>
> An order giving final approval of a proposed settlement may not be issued earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State official are served with the notice required under subsection (b).

28 U.S.C. § 1715(b), (d).

OnPoint provided notice of the proposed settlement to the Attorneys General of states in which class members reside, as well as to the U.S. Attorney General, the National Credit Union Administration, the Oregon Department of Consumer and Business Services, and the Washington State Department of Financial Institutions. ALCS Decl. ¶ 3 & Ex. A. No state or federal official has objected to the settlement or otherwise become involved in the case. This factor therefore favors approval.

### F. The reaction of class members favors approval.

No settlement class members have objected to the settlement or chosen to opt out. ALCS Decl. ¶¶ 8, 9. The absence of objections and opt-outs shows that class members support the settlement. *See In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 320-21 (N.D. Cal. 2018) (low rates of objections and opt-outs are 'indicia of the approval of the class' " (citation omitted)). This factor favors approval.

G.  **There is no evidence of collusion.**

When the settlement agreement is negotiated before formal class certification, a court should engage in "an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e)." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 946.  As this Court has explained, "[t]he Ninth Circuit has identified three signs of collusion: (1) class counsel receives a disproportionate distribution of the settlement, or when the class receives no monetary distribution but counsel is amply awarded; (2) the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds without objection by a defendant; and (3) the parties arrange for payments not awarded to revert to a defendant rather than to be added to the class fund.  *Magallon I*, 2025 WL 1324248, at *4 (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 947).

In this case, class counsel seeks an attorneys' fee award of $525,000, which reflects a negative multiplier on their lodestar amount and was calculated using reasonable rates in this district.  *See generally* ECF 91.  Class counsels' fees were negotiated, and are to be paid, separately from the settlement fund, and they are subject to the Court's approval.  Although OnPoint did not file objections to Plaintiffs' motion for attorneys' fees, the settlement agreement did not contain a "clear sailing" provision and thus preserved their ability to do so.  *See* Dahab Decl., ECF 89, ¶ 2, Ex. A, § 15.

The requested attorneys' fees reflect a significant percentage of the total amount of money OnPoint will pay as part of the Settlement.  But that result is reasonable here for several reasons.  First, the class settlement fund was negotiated before, and independently of, any negotiation relating to fees.  In that respect, the fee award will also not impact the class recovery.  This Court previously has held that the percentage of recovery analysis is unnecessary in such

Page 11 - PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

circumstances. *See Magallon v. Robert Half Int'l Inc. (Magallon II)*, No. 6:13-cv-1478-SI, 2025 WL 1326740, at *4 (D. Or. May 7, 2025) ("The Court agrees that, given that the award of attorney's fees does not affect the Class Members' recovery in this case, a percentage of recovery analysis is unnecessary here."). Second, in this case, the class's primary claim arises under the EFTA, which provides for fee shifting. *See Staton v. Boeing*, 327 F.3d 937, 971 (9th Cir. 2003) (Where counsel pursues a statutory claim with a fee-shifting provision, "the parties to a class action may simultaneously negotiate merits relief and an award of attorneys' fees . . . ." (citing *Evans v. Jeff D.*, 475 U.S. 717, 720 (1986)). Third, Plaintiff's requested fees are approximately half of class counsel's reasonable lodestar. Fourth, the settlement agreement allowed OnPoint to object to the requested award, and it has not. Finally, the Court ensured that the notice clearly advised class members of the amount counsel seeks, and of their ability to object to the requested award. ECF 87. No class member has objected.[2]

### H. The Rule 23(e)(2) considerations favor approval.

The considerations outlined in Rule 23(e)(2) also support final approval of the settlement. Under Rule 23(e)(2), a district court considers whether (A) the class representatives and their counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided by the settlement is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief including the method of processing class-member claims, if required; (iii) the terms of any

---

[2] Plaintiff addresses the reasonableness of the requested attorneys' fees in more detail in the motion filed on February 18, 2025, *see* ECF 87, and posted to the settlement website on February 19, 2025, 47 days before the April 7 deadline for class members to opt out or object, and in compliance with *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010). The Court, of course, has ultimate discretion over the amount of the attorneys' fee award after reviewing Plaintiff's motion.

Page 12 - PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

proposed award of attorney's fees, including timing of payment; (iv) any agreement required to be identified under Rule 23(e)(3) made in connection with the proposed settlement; and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

The first consideration, whether Plaintiff and class counsel have adequately represented the class, Fed. R. Civ. P. 23(e)(2)(A), supports approval. In granting class certification, the Court concluded that Plaintiff was an adequate class representative with claims typical of those of members of the class. ECF 90, at 5. The Court further found that class counsel has extensive experience and expertise in prosecuting consumer class actions. ECF 90, at 5. Class counsel have devoted a great deal of time and resources to representing class members and negotiating a favorable settlement of their claims. Chandler Decl. ¶ 4 – 8, Second Chandler Decl. ¶ 26 – 36; Second Declaration of Nadia Dahab ("Second Dahab Decl."), ECF 92, ¶¶ 7–17. This consideration therefore supports approval.

The second consideration, whether the proposal was negotiated at arms' length, also supports approval. The Court is aware of the hard-fought nature of this litigation, which involved disputed discovery issues and motions. The parties approached settlement discussions in the same way. As noted above, none of the "red flags" of potential collusion the Ninth Circuit has identified exists in this case. *See supra* Part I.G (citing *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 947).

The third consideration, whether the relief afforded is adequate, also supports settlement. As discussed above, the $500,000 settlement fund constitutes more than 95 percent of class members' actual damages, and is more than adequate to warrant approval, particularly in light of the costs, risks and delay of trial and appeal. Chandler Decl., ECF 86-2, ¶ 5. Class members do

not have to file claims to receive payments from the settlement fund. Funds will be distributed as set forth by the settlement agreement. Dahab Decl. ¶ 2, Ex. A, § 15.

Finally, the fourth consideration supports approval. The distribution plan ensures that class members will be treated equitably relative to each other. *See Radcliffe v. Hernandez*, 794 F. App'x 605, 607 (9th Cir. 2019) ("Rule 23's flexible standard allows for the unequal distribution of settlement funds so long as the distribution formula takes account of legitimate considerations and the settlement remains 'fair, reasonable, and adequate.' " (quoting Fed. R. Civ. P. 23(e)(2)), *cert. denied sub nom. Radcliffe v. Experian Info. Sols., Inc.*, 141 S. Ct. 87 (2020). Each class member's share is to be calculated as a proportional share according to the amount of the class members' unreimbursed EFTA dispute, calculated using a numerator consisting of the amount of the class member's unreimbursed EFTA dispute, and a denominator consisting of the aggregate amount of all unreimbursed EFTA disputes for all class members. In the case of accounts that list more than one account owner, the pro rata share payable on that account will be divided equally among account owners with separate checks issued to each. Dahab Decl. ¶ 2, Ex. A, § 3.2.3. This consideration favors approval.

**II.     Class members received the best notice practicable under the circumstances.**

The notice plan approved by the Court and implemented by ALCS also satisfied the requirements of Rule 23 and due process, providing class members the best notice practicable under the circumstances. Rule 23 provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). When a class is certified under Rule 23(b)(3), the notice must also be the "best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). To comply with constitutional due

Page 14 - PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

process standards, the notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cen. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

The Court-approved notice plan satisfied these requirements. The notices provided class members with, among other information, a summary of the litigation, including the claims and defenses; a clear definition of the class; a description of the material terms of the settlement; an explanation of class members' rights to object, opt out, and appear at the fairness hearing, as well as instructions on how to do so; the date, time, and location of the fairness hearing; the internet address for the settlement website and the telephone number that class members could use to obtain more information; contact information for class counsel and the administrator, and an explanation of the binding effect of a class judgment. Fed. R. Civ. P. 23(c)(2)(B); *see also In re Hyundai and Kia Fuel Econ. Litig.*, 926 F.3d 539, 567 (9th Cir. 2019) ("settlement notices must 'present information about a proposed settlement neutrally, simply, and understandably' " (citation omitted)). In that respect, the notices gave class members "enough information so that those with adverse viewpoints could investigate and come forward and be heard." *In re Hyundai*, 926 F.3d at 568 (citation omitted); *see also Lane*, 696 F.3d at 826 (class notice need only "generally describ[e] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard" (quoting *Rodriguez*, 563 F.3d at 962)).

ALCS sent the postcard notice to 328 class members directly through U.S. first-class mail using the most recent address information available based on Defendant's records, the USPS National Change of Address database, skip-tracing and manual updates from class members. ALCS Decl. ¶¶ 4, 7. Of those, 41 were returned as undeliverable. ALCS Decl. ¶ 7. ALCS re-

Page 15 - PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

mailed the notice to 33 class members after performing an advanced address search. ALCS Decl. ¶¶ 6, 7. In total, 307 class members, or 93.6 percent of the class, received direct notice. ALCS Decl. ¶ 7; *see also Edwards v. Andrew*, 846 F. App'x 538, 2021 WL 1626519, at *1 (9th Cir. Apr. 27, 2021) (affirming finding "that the plaintiffs' class notice satisfied Federal Rule of Civil Procedure 23 and due process because, among other things, the plaintiffs' expert opined that at least 75 percent of the class received notice").

Additionally, ALCS established a settlement website at www.granadosEFTAsettlement.com with detailed information about the settlement, including the website notice; important court documents; important dates; instructions for opting out, objecting, or updating a class member's address; and answers to frequently asked questions. ALCS Decl. ¶ 10. On February 19, 2024, ACLUS posted Plaintiff's Motion for Attorneys' Fees, Costs, and Service Award to the website. ALCS Decl. ¶ 10.

Because the notice plan approved by the Court was faithfully executed by ALCS and complies with Rule 23 and due process, the settlement should be approved.

## CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that this Court grant final approval of the parties' settlement as fair, reasonable, and adequate, certify the proposed class for settlement purposes, and enter final judgment in this case. The settlement is an excellent result, considering the nature of the litigation, the extensive risks of a trial, future motion practice, and a potential appeal. Each class member will receive an automatic payment without the need to make a claim. The terms of the settlement, as well as the circumstances surrounding negotiations and its elimination of further costs and delays caused by litigating this case through trial and appeal, satisfy the requirements for final approval.

DATED this 27th day of May, 2025.

        SUGERMAN DAHAB

    By: /s/ Nadia H. Dahab
     **David F. Sugerman**, OSB No. 862984
     **Nadia H. Dahab**, OSB No. 125630
     101 SW Main Street Ste. 910
     Portland, OR 97204
     Tel: (503) 228-6474
     david@sugermandahab.com
     nadia@sugermandahab.com

     **Beth E. Terrell** (admitted *pro hac vice*)
     **Blythe H. Chandler** (admitted *pro hac vice*)
     **Jennifer Rust Murray**, OSB No. 100389
     **Ryan Tack-Hooper** (admitted *pro hac vice*)
     TERRELL MARSHALL LAW GROUP PLLC
     936 North 34th Street Ste. 300
     Seattle, WA 98103-8869
     Tel: (206) 816-6603
     bterrell@terrellmarshall.com
     jmurray@terrellmarshall.com
     rtack-hooper@terrellmarshall.com

     **Daniel A. Schlanger** (admitted *pro hac vice*)
     SCHLANGER LAW GROUP LLP
     60 East 42nd Street, 46th Floor
     New York, NY 10165
     Tel: (212) 500-6114
     dschlanger@consumerprotection.net

     *Attorneys for Plaintiff and the Proposed Class*