## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **JENNA GRANADOS,** on behalf of herself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**ONPOINT COMMUNITY CREDIT UNION,**<br><br>Defendant. | Case No. 3:21-cv-847-SI<br><br>**OPINION AND ORDER** |

David F. Sugerman and Nadia H. Dahab, SUGERMAN DAHAB, 101 SW Main Street Suite 910, Portland, OR 97204; Beth E. Terrell, Blythe H. Chandler, Jennifer Rust Murray, and Ryan Tack-Hooper, TERRELL MARSHALL LAW GROUP PLLC, 936 North 34th Street Suite 300, Seattle, WA 98103; and Daniel A. Schlanger, SCHLANGER LAW GROUP LLP, 60 East 42nd Street, 46th Floor, New York, NY 10165. Of Attorneys for Plaintiffs.

Kimberley Hanks McGair, FARLEIGH WADA WITT, 121 SW Morrison Street, Suite 600, Portland, OR 97204; K. Issac deVyver and Karla L. Johnson, MCGUIREWOODS LLP, Tower Two-Sixty, 260 Forbes Avenue, Suite 1800, Pittsburgh, PA 15222; and Jeffrey Paul Ehrlich, MCGUIREWOODS LLP, 888 16th Street N.W., Suite 500, Washington, DC 20006. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Jenna Granados brings this putative class action against OnPoint Community Credit

("OnPoint"), alleging violations of the Electronic Funds Transfer Act, 15 U.S.C. § 1693 *et seq.*

("EFTA"), and breach of contract. Granados contends that OnPoint violated the EFTA by failing

to investigate losses, failing to cover its members' losses, and asserting that it had no obligation to cover such losses. Granados also alleges that OnPoint breached its contract with its customers. Granados moved for preliminary approval of her class settlement with OnPoint (ECF 88), and the Court preliminarily approved the Settlement Agreement (ECF 90).[1] Now before the Court is Granados's unopposed Motion for Final Approval of Class Action Settlement (ECF 97), and her unopposed Motion for Attorney Fees, Costs, and Service Award (ECF 91).

## BACKGROUND

Granados alleges that a person whose identity is unknown to her fraudulently misrepresented himself as a representative of OnPoint's "Fraud Department" and obtained from Granados the personal identification number ("PIN") for her OnPoint debit card. The alleged fraudster then used Granados's PIN to withdraw $3,474.28 from her OnPoint account, transactions that Granados alleges were unauthorized electronic fund transfers under Regulation E, 12 C.F.R. § 1005 (2019).[2] Granados disputed the charges with OnPoint, and OnPoint did not credit Granados's account for the "stolen" funds. Granados alleges that OnPoint had a policy of denying claims involving unauthorized transactions when OnPoint believed that access was gained because of fraud or when the consumer did not sufficiently protect account information. Granados further asserts that OnPoint breached its account agreement with its consumer customers, in which OnPoint represents that it will investigate when a consumer customer brings to OnPoint's attention an error regarding a transfer. OnPoint admits that Granados disputed the charges and that OnPoint initially declined to credit Granados's account,

---

[1] Unless otherwise indicated, all capitalized terms used in this Opinion and Order have the same meanings as defined in the Settlement Agreement (ECF 89-1).

[2] "Unauthorized transactions" are defined under 12 C.F.R. § 1005.2(m)(3).

but OnPoint asserts that it has credited Granados's account with the full amount of the allegedly

unauthorized withdrawals. OnPoint denies all other allegations and liability. This lawsuit

followed. As noted above, the parties have reached a classwide settlement, which is now before

the Court for final approval.

## DISCUSSION

### A. Settlement Class Certification

#### 1. Notice to the Class

The Court granted preliminary approval to the parties' proposed notice procedure.

ECF 90. The Court is satisfied that the notice procedure was carried out according to the

applicable standards. The Court finds that notice of the Settlement Agreement was given to the

Settlement Class by the best means practicable under the circumstances, including mailing the

Notice to Class Members and posting the Notice, Settlement Agreement, and Preliminary

Approval Order on a dedicated website.

The Notice provided Class Members with all required information including, among

other things: (1) a summary of the action and the claims asserted; (2) a clear definition of the

Settlement Class; (3) a description of the material terms of the Settlement Agreement; (4) the

fact that no affirmative action was needed to receive the benefit of class membership, but notice

that Class Members could opt out of the Settlement Class; (5) an explanation of Class Members'

opt-out rights, the date by which Class Members must opt out, and information about how to do

so; (6) explaining the release of claims should Class Members choose to remain in the Settlement

Class; (7) instructions about how to object to the Settlement Agreement and the deadline for

Class Members to submit any objections; (8) instructions about how to object to the requested

attorney's fees, expenses, and service awards and the deadline for Class Members to submit any

objections; (9) the date, time, and location of the final approval hearing; (10) the internet address

for the settlement website from which Class Members could obtain more information on the Settlement Agreement; (11) contact information for the settlement administrator and the Court; and (12) information about how Class Counsel and the Class Representative would be compensated. The notice is sufficient. *See Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012) (reaffirming that a class notice need only "generally describe[] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard" (alteration in original) (quoting *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009))).

The form and method of notifying the Settlement Class fairly and adequately advised Class Members of all relevant and material information about the action and the proposed Settlement Agreement. The Court finds that the notice satisfies the requirements of due process and Rule 23 of the Federal Rules of Civil Procedure.

### 2. Rule 23 Requirements

To certify either a settlement class or a litigation class, the requirements of Rule 23 must be satisfied. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). Rule 23 affords this Court with "broad discretion over certification of class actions." *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1021 (9th Cir. 2011), *abrogated on other grounds by Comcast Corp. v. Behrend*, 569 U.S. 27 (2013). A plaintiff seeking class certification must satisfy each requirement of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—and one subsection of Rule 23(b). *See, e.g., Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 724 & n.5 (9th Cir. 2007). Rule 23 sets forth more than a "mere pleading standard." *Wal-Mart*, 564 U.S. at 350. On the other hand, Rule 23 provides district courts with

broader discretion to certify a class than to deny certification. *See Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 956 (9th Cir. 2013).

"The criteria for class certification are applied differently in litigation classes and settlement classes." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (en banc). In considering a litigation class, the court "must be concerned with manageability at trial," whereas in considering a settlement class, "such manageability is not a concern . . . [because], by definition, there will be no trial." *Id.* at 556-57. "[I]n deciding whether to certify a settlement class, a district court must give heightened attention to the definition of the class or subclasses." *Id.* at 557. This determination "demand[s] undiluted, even heightened, attention in the settlement context" because the court "lack[s] the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *see also Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 848-49 (1999) ("When a district court, as here, certifies for class action settlement only, the moment of certification requires heightened attention." (cleaned up)).

The Rule 23 analysis is "rigorous" and may "entail some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart*, 564 U.S. at 351 (quotation marks omitted); *Comcast Corp.*, 569 U.S. at 33-34. Nevertheless, Rule 23 "grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013). "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* A district court, however, "*must* consider the merits if they overlap with the Rule 23(a) requirements." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (emphasis in original).

Granados moves without objection to certify the Settlement Class defined as: all OnPoint members who reported unauthorized, fraudulent transactions under Regulation E, whose claims were denied by OnPoint, on the basis of failure to keep safe their account credentials or negligence, between June 3, 2020, and December 31, 2021. The Court previously agreed that the Class met the requisite factors in conditionally certifying the Class for settlement purposes in the preliminary approval of the Settlement. The Court, however, must now conduct a "rigorous" analysis of the Rule 23 factors.

### a.  Numerosity

Rule 23(a)(1) requires a plaintiff to demonstrate that the proposed class "is so numerous that joinder of all members is impracticable." Rule 23(a)(1) provides no bright-line test or minimum number of class members necessary to meet the numerosity requirement. Instead, the court must evaluate the specific facts of each case. *Gen. Tel. Co. of the Nw., Inc. v. Equal Emp. Opportunity Comm'n*, 446 U.S. 318, 330 (1980). In general, classes of 20 members or fewer are too small, classes of 21 to 40 members may or may not be sufficiently numerous depending on the facts of the case, and classes of 41 and higher are sufficiently numerous. *See* 5 James Wm. Moore et al., *Moore's Federal Practice - Civil* § 23.22(1)(b) (3d ed. 2021). In this district, there is a "rough rule of thumb" that more than 40 class members meets the numerosity requirement. *J.N. v. Or. Dep't of Educ.*, 338 F.R.D. 256, 264 (D. Or. 2021) (quotation marks omitted); *see also Wilcox Dev. Co. v. First Interstate Bank of Or., N.A.*, 97 F.R.D. 440, 443 (D. Or. 1983) (same); 1 *McLaughlin on Class Actions* § 4:5 (21st ed.) ("The rule of thumb adopted by most courts is that proposed classes in excess of 40 generally satisfy the numerosity requirement."); 5 *Moore's Federal Practice - Civil* § 23.22(1)(b) ("A class of 41 or more is usually sufficiently numerous. Once again, many courts have ruled that classes with more than 40 members satisfy the numerosity requirement.").

Records provided to the Settlement Administrator confirmed the number of Class Members to be 328. ECF 96 ¶ 4 (Declaration of Mark Unkefer, a director for the Settlement Administrator). The Court therefore finds that the Class meets the numerosity requirement.

### b.  Commonality

Rule 23(a)(2) states that class certification is appropriate only when the case presents "questions of law or fact common to the class." To satisfy the commonality requirement, the plaintiff must show that the class members suffered the "same injury" and that their claims depend upon a "common contention." *Wal-Mart*, 564 U.S. at 350 (quotation marks omitted). "That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* But class members need not have every issue in common. Commonality requires only "a single significant question of law or fact" in common. *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012), *overruled on other grounds by Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022); *see also Wal-Mart*, 564 U.S. at 359. "These common questions may center on 'shared legal issues with divergent factual predicates [or] a common core of salient facts coupled with disparate legal remedies.'" *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014) (alteration in original) (quoting *Hanlon*, 150 F.3d at 1019).

Granados alleges that the Class incurred losses due to OnPoint's violations of the EFTA. Specifically, she alleges that OnPoint had a policy of denying claims for unauthorized payments where the consumer provided the access code to the person initiating the transfer, failed to provide required notice under the EFTA, and breached its contractual promise of investigating whenever a consumer brings an error regarding a transfer to OnPoint's attention. There are common issues of law and fact stemming from these allegations, including whether OnPoint had

the alleged standardized policies, whether OnPoint conducted any investigations, and whether it provided notice. The Court finds that the Settlement Class meets the commonality requirement.

### c. Typicality

To meet the typicality requirement, a plaintiff must show that the named parties' claims or defenses are typical of the claims or defenses of the class. Fed. R. Civ. P. 23(a)(3). Under the "permissive standards" of Rule 23(a)(3), "representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992), *superseded by statute on other grounds*. To determine whether claims and defenses are typical, courts look to "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (quoting *Hanon*, 976 F.3d at 508).

Granados's claims are based on the same conduct as the claims of the Settlement Class and there is nothing to suggest that her claims are not coextensive with those of the Class. Thus, the Class meets the typicality requirement.

### d. Adequacy of Representation

Rule 23(a)(4) states that before a class can be certified, a court must find that "the representative parties will fairly and adequately protect the interests of the class." This requirement turns on two questions: (1) whether "the named plaintiffs and their counsel have any conflicts of interest with other class members"; and (2) whether "the named plaintiffs and their counsel [will] prosecute the action vigorously on behalf of the class." *Hanlon*, 150 F.3d at 1020;

*see also* Fed. R. Civ. P. 23(g) (setting out factors to consider before appointing class counsel). The adequacy requirement is based on principles of constitutional due process. Accordingly, a court cannot bind absent class members if class representation is inadequate. *Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940); *Hanlon*, 150 F.3d at 1020.

Granados is an adequate representative of the Class because there is no evidence to suggest that she has any conflicts of interest with other Class Members. Class Counsel has vigorously pursued the interests of the Class, including by conducting a pre-suit investigation, filing multiple complaints, obtaining discovery, opposing OnPoint's motion to dismiss, and engaging in settlement discussions. Thus, the Court finds that Granados and Class Counsel are adequate to represent the Class.

### e. Predominance

Rule 23(b)(3) requires a court to find that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." This analysis, in accord with Rule 23's "principal purpose" of "promot[ing] efficiency and economy of litigation," inquires into "the relationship between the common and individual issues in the case, and tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation." *Abdullah*, 731 F.3d at 963-64 (cleaned up). The focus of this inquiry, however, is on "*questions* common to the class"—a plaintiff need not, at this threshold, "prove that the predominating question[s] will be answered in their favor." *Amgen*, 568 U.S. at 459, 468 (emphasis in original).

"[T]here is substantial overlap between" the test for commonality under Rule 23(a)(2) and the predominance test under 23(b)(3). *Wolin*, 617 F.3d at 1172. The predominance test, however, "is 'far more demanding,' and asks 'whether proposed classes are sufficiently cohesive

to warrant adjudication by representation.'" *Id.* (citation omitted) (quoting *Amchem*, 521 U.S. at 623-24). To determine whether common questions predominate, the Court begins with "the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011).

The common questions relevant to Granados's claims predominate over any issues relevant to any individual class member. Granados's claims share essential factual issues including whether OnPoint had a standard policy and whether this policy violates the EFTA. *See Amchem*, 521 U.S. at 625 ("Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws."). Thus, the Class meets the predominance requirement.

### f.  Superiority

Rule 23(b)(3)'s superiority requirement tests whether "classwide litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). To make this determination, a court looks to "whether the objectives of the particular class action procedure will be achieved in the particular case." *Hanlon*, 150 F.3d at 1023. In turn, this inquiry "necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution." *Id.* The Ninth Circuit recognizes that "[d]istrict courts are in the best position to consider the most fair and efficient procedure for conducting any given litigation, and so must be given wide discretion to evaluate superiority." *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 712 (9th Cir. 2010) (cleaned up). Relating to superiority, the purpose of Rule 23(b)(3) is "to allow integration of numerous small individual claims into a single powerful unit." *Id.* at 722 (quotation marks omitted). This allows plaintiffs who otherwise likely would be "unable to proceed as individuals because of the disparity between their litigation costs and what they hope to recover. . . . 'to pool claims which would be uneconomical

to litigate individually.'" *Loc. Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001) (quoting *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985)).

Rule 23(b)(3) provides four non-exhaustive factors for courts to consider. These factors are:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

Regarding the first factor, "[w]here recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification." *Wolin*, 617 F.3d at 1175. Here, each Class Member has suffered relatively modest out-of-pocket losses—the average (mean) loss is $1,556.91. Accordingly, "[b]ecause individual damages pale in comparison to the costs of litigation, this factor points toward certification." *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 316 (N.D. Cal. 2018).

As to the second factor, this is the only action brought against OnPoint for this conduct. The second factor therefore favors certification. As to the third factor, concentrating this litigation in the District of Oregon is appropriate because the challenged conduct occurred in Oregon and potential Class Members are not centralized in any one geographic location.

The Court need not consider the fourth factor because the parties only seek certification of a settlement class, not a litigation class. *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. Rule Civ. Proc. 23(b)(3)(D), for the

proposal is that there be no trial."). The Court finds that the Class meets the superiority requirement.

### 3. Conclusion

The Class meets the requirements for class certification. The Court finally certifies for settlement purposes the following class: all OnPoint members who reported unauthorized, fraudulent transactions under Regulation E, whose claims were denied by OnPoint, on the basis of failure to keep safe their account credentials or negligence, between June 3, 2020, and December 31, 2021. Excluded from the Settlement Class are any persons and entities who exclude themselves by submitting a request for exclusion that is accepted by the Court.

## B. Settlement Approval

### 1. General Standards

Under Rule 23(e) of the Federal Rules of Civil Procedure, "[t]he claims, issues, or defenses of a certified class . . . may be settled, voluntarily dismissed, or compromised only with the court's approval." "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). Thus, to approve a class action settlement, a court must find that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Lane*, 696 F.3d at 818.

The settlement must be considered as a whole, and although there are "strict procedural requirements on the approval of a class settlement, a district court's only role in reviewing the substance of that settlement is to ensure it is 'fair, adequate, and free from collusion.'" *Lane*, 696 F.3d at 818-19 (quoting *Hanlon*, 150 F.3d at 1027). A court must consider whether: "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . . ; and (D) the

proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2). The

Ninth Circuit has articulated a number of factors guiding this review, including:

> [1] the strength of the plaintiffs' case; [2] the risk, expense,
> complexity, and likely duration of further litigation; [3] the risk of
> maintaining class action status throughout the trial; [4] the amount
> offered in settlement; [5] the extent of discovery completed and the
> stage of the proceedings; [6] the experience and views of
> counsel; [7] the presence of a governmental participant; and [8] the
> reaction of the class members to the proposed settlement.

*Lane*, 696 F.3d at 819. Courts within the Ninth Circuit "put a good deal of stock in the product of

an arms-length, non-collusive, negotiated resolution." *Rodriguez*, 563 F.3d at 965.

Class action settlements involve "unique due process concerns for absent class members

who are bound by the court's judgments." *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157,

1168 (9th Cir. 2013) (cleaned up). When the settlement agreement is negotiated before formal

class certification, as in this case, the court should engage in "an even higher level of scrutiny for

evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e)."

*Id.* (cleaned up). This more "exacting review" is warranted "to ensure that class representatives

and their counsel do not secure a disproportionate benefit at the expense of the unnamed

plaintiffs who class counsel had a duty to represent." *Lane*, 696 F.3d at 819 (quotation marks

omitted).

The Ninth Circuit has recognized, however, that "[j]udicial review also takes place in the

shadow of the reality that rejection of a settlement creates not only delay but also a state of

uncertainty on all sides, with whatever gains were potentially achieved for the putative class put

at risk." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). Thus, there is a "strong judicial

policy that favors settlements, particularly where complex class action litigation is concerned."

*In re Hyundai*, 926 F.3d at 556 (quoting *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015)).

### 2. Litigation Strategy Factors

The Court begins by analyzing the litigation strategy focused factors—the strength of Granados's case; the risk, expense, complexity, and likely duration of future litigation; and the risk of maintaining class action status throughout trial. Granados contends that although she believes she has meritorious claims, proceeding with this litigation would be risky. Granados notes that future litigation would include class certification, summary judgment, trial, post-trial motions, and appeal, and would likely continue for many years, especially given that EFTA law is not well settled. Besides the risk of dismissal before trial or loss at trial, continued litigation would be expensive and time-consuming. Further, class certification had not begun at the time the parties reached a settlement, and both sides bore the risk that a class would or would not be certified. Thus, given the parties' uncertainty of the outcome and the complexity of this case, these litigation strategy factors favor approval of the Settlement Agreement.

### 3. Amount Offered in Settlement

The Settlement amount is $500,000. The proposed method of allocation awards each claimant a pro rata share of the Settlement Fund based on the amount of the claimant's unauthorized transfer dispute that was not reimbursed. Granados states that under the terms of the Settlement, Class Members recover more than 95 percent of their actual damages: the average amount lost was $1,556.91, and the Settlement amount provides for an average of $1,524.39 per Class Member. Based on these facts, the amount offered in the Settlement Agreement is adequate and supports approval of the Settlement.

### 4. Extent of Discovery Completed

Formal discovery is not required before a class action settlement. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239-40 (9th Cir. 1998). Rather, "[a]pproval of a class action settlement is proper as long as discovery allowed the parties to form a clear view of the strengths

and weaknesses of their cases." *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 454 (E.D. Cal. 2013). The parties assert that although this case settled before formal discovery, they nevertheless established a substantial evidentiary record and exchanged sufficient information to adequately determine the strengths and weaknesses of their positions. The parties briefed one motion to dismiss, conducted several depositions, and produced thousands of pages of documents. *See Zepeda v. PayPal, Inc.*, 2017 WL 1113293, at *14 (N.D. Cal. Mar. 24, 2017) (concluding that although the parties had not engaged in formal discovery, "the parties informally exchanged information and documents in connection with the three prior mediations conducted in this action," which favored approval of the settlement). This factor thus supports approval of the Settlement.

### 5. Experience and Views of Counsel

"Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). Although counsel's views are instructive, they do not entitle the settlement to a presumption of fairness. *See Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049 (9th Cir. 2019). The Court is satisfied that Class Counsel has extensive experience litigating class actions. Thus, Class Counsel's recommendation that the Settlement is fair, reasonable, and adequate favors approval.

### 6. Presence of a Government Participant

The Class Action Fairness Act ("CAFA") provides in relevant part:

> Not later than 10 days after a proposed settlement of a class action is filed in court, each defendant . . . shall serve upon the appropriate State official of each State in which a class member resides and the appropriate Federal official, a notice of the proposed settlement[.]
>
> * * *

> An order giving final approval of a proposed settlement may not be issued earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State official are served with the notice required under subsection (b).

28 U.S.C. § 1715(b), (d). The Settlement Administrator mailed notices of the proposed settlements to the U.S. Attorney General and state Attorneys General of the states in which any Class Member resides by the required deadline under CAFA. ECF 96 ¶ 3 & Ex. A. The Settlement Administrator also sent notices to the National Credit Union Administration, Oregon Department of Consumer and Business Services, and the Washington State Department of Financial Institutions. *Id.* No state or federal official has objected to the Settlement or otherwise become involved in the case. This factor therefore favors approval.

### 7.  Reaction of the Class Members to the Settlement

No Class members objected to the Settlement, and no members opted out. The lack of opt-outs and objections show that Class Members favor the Settlement. This factor favors approval.

### 8.  Evidence of Collusion

When the settlement agreement is negotiated before formal class certification, as in this case, a court should engage in "an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e)." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). The Ninth Circuit has identified three signs of collusion: (1) class counsel receives a disproportionate distribution of the settlement, or when the class receives no monetary distribution but counsel is amply awarded; (2) the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds without objection by a defendant; and (3) the parties arrange for payments not awarded to revert to a defendant rather than to be added to the class fund. *Id.* at 947.

Class Counsel seeks attorney's fees in the amount of $525,000, to be paid by OnPoint separately from the Settlement Fund. Further, the Settlement contains no "clear sailing" or reversion provisions. The Court identifies no evidence of collusion or other conflicts of interest, which favors approval.

### 9. Conclusion

The above factors support approval of the Settlement Agreement. The Court therefore finds that the Settlement and Plan of Allocation are fair, reasonable, and adequate.

## C. Attorney's Fees and Expenses

### 1. Class Representative Service (Incentive) Award

Granados and Class Counsel request a service award in the amount of $10,000 to Granados. "Incentive awards are payments to class representatives for their service to the class in bringing the lawsuit." *Radcliffe*, 715 F.3d at 1163. They are often taken from a common settlement fund. *Id.* Although incentive awards are "fairly typical in class action cases," *Rodriguez*, 563 F.3d at 958, they should be scrutinized to ensure "that they do not undermine the adequacy of the class representatives." *Radcliffe*, 715 F.3d at 1163. The adequacy of class representatives can be undermined by, for example, incentive awards that are contingent on the named representatives approving the class settlement, *see id.* at 1164, or by disproportionately large incentive awards, *see Staton*, 327 F.3d at 975, 977 (reversing district court's approval of incentive awards approximately sixteen times greater than the recovery of unnamed class members). The service award here is not disproportionately large, and it reflects Granados's involvement in the case during the four years of litigation. Thus, the Court finds that the requested service award is reasonable.

### 2. Attorney's Fees

Class Counsel requests attorney's fees in the amount of $525,000 in addition to the
$500,000 Settlement Fund. Class Counsel argues that the lodestar amount is the appropriate
calculation for fees because EFTA claims provide for mandatory fee shifting for a prevailing
plaintiff and because attorney's fees were negotiated separately from the Settlement Fund. The
Court agrees that the lodestar method, and not a percentage of recovery method, is appropriate.
Class Counsel contends that its lodestar totals $1,025,250, but Class Counsel requests only
$525,000 in fees, for a multiplier of 0.51.

### a. Legal Standards

Requests for attorney's fees must be made by a motion pursuant to Rule 54(d)(2) and
Rule 23(h) of the Federal Rules of Civil Procedure. In addition, notice of the motion must be
served on all parties and class members. Fed. R. Civ. P. 23(h). When settlement is proposed
along with a motion for class certification, notice to class members of the fee motion ordinarily
accompanies the notice of the settlement proposal itself. Fed. R. Civ. P. 23(h) advisory
committee's notes to 2003 amendment. The deadline for class members to object to requested
fees must be set after the motion for the fees and documents supporting the motion have been
filed. *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993-94 (9th Cir. 2010).
"Allowing class members an opportunity thoroughly to examine counsel's fee motion, inquire
into the bases for various charges and ensure that they are adequately documented and supported
is essential for the protection of the rights of class members." *Id*. at 994. Here, Class Counsel
filed its motion for attorney's fees and supporting documents 48 days before the deadline to file
objections, thereby complying with *In re Mercury*.

A district court's disposition of a motion for attorney's fees must "provide a reasonably
specific explanation for all aspects of a fee determination" in order to allow for "adequate

appellate review." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 558 (2010). The "lodestar" method is the preferred method because "the lodestar method produces an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case," is "readily administrable," and is "objective." *Id.* at 551-52 (emphasis in original). Additionally, one purpose of federal fee-shifting statutes is to ensure that a prevailing class counsel receive a fee that is "sufficient to induce a capable attorney to undertake the representation of a meritorious . . . case." *Id.* at 552. The lodestar method of calculating attorney's fees "yields a fee that is presumptively sufficient to achieve this objective." *Id.* Although the lodestar calculation results in a presumptively reasonable fee, this fee may be adjusted in certain circumstances. *Id.*

The lodestar amount is the product of the number of hours reasonably spent on the litigation multiplied by a reasonable hourly rate. *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009).[3] A district court should take into consideration various factors of reasonableness, including the quality of an attorney's performance, the results obtained, the novelty and complexity of a case, and the special skill and experience of counsel. *See Perdue*, 559 U.S. at 554; *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1209 n.11 (9th Cir. 2013). In determining the number of hours reasonably spent, "the district court should exclude hours 'that are excessive, redundant, or otherwise unnecessary.'" *McCown*, 565 F.3d at 1102 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). The party seeking an award of attorney's fees "has the burden of submitting billing records to establish that the number of hours it has requested [is] reasonable." *Gonzalez*, 729 F.3d at 1202.

---

[3] It is "well established that time spent in preparing fee applications" also is compensable. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1210 (9th Cir. 2013) (quotation marks omitted).

The district court may determine, in one of two ways, whether hours are excessive, redundant, or otherwise unnecessary, and thus excludable. The court may conduct an hour-by-hour analysis of the fee request. *Id.* at 1203. Alternatively, "when faced with a massive fee application the district court has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure." *Id.* (quoting *Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1992)). "[W]hen a district court decides that a percentage cut (to either the lodestar or the number of hours) is warranted, it must 'set forth a concise but clear explanation of its reasons for choosing a given percentage reduction.'" *Id.* (quoting *Gates*, 987 F.2d at 1400). The Ninth Circuit recognizes one exception to this rule: "[T]he district court can impose a small reduction, no greater than 10 percent—a 'haircut'— based on its exercise of discretion and without a more specific explanation." *Id.* (alteration in original) (quoting *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008)).

In addition, other courts, including the District of Oregon, specifically caution against both block-billing and providing vague or otherwise inadequate descriptions of tasks because these practices hinder a court's ability to assess the reasonableness of the time expended. *See, e.g.*, U.S. District Court, District of Oregon, Message from the Court Regarding Fee Petitions, *available at* https://www.ord.uscourts.gov/index.php/rules-orders-and-notices/public-notices/355-fee-petitions (last updated Nov. 21, 2024). Block billing is defined as "any time entry of three or more hours either containing four or more tasks, or in the alternative containing two or more tasks, where at least one of the tasks could have taken anywhere from a small to a substantial amount of time." *Bala v. Or. Health & Sci. Univ.*, 2024 WL 3785975, at *8 (D. Or. Aug. 12, 2024) (quotation marks omitted). Entries that "involve closely related but discretely identified tasks that are properly viewed as a unit" are not block billing. *Id.* The Court has

applied this cautionary statement, noting that "the court may excuse this method when the billing period is no more than three hours." *Updike v. Multnomah County*, 2020 WL 4736461, at *2 (D. Or. Aug. 14, 2020) (quoting *Noel v. Hall*, 2013 WL 5376542, at *6 (D. Or. Sept. 24, 2013)); *cf. Lyon v. Chase Bank USA, N.A.*, 656 F.3d 877, 892 (9th Cir. 2011). For block-billing periods more than three hours, the Court reduces each applicable entry by 50 percent. *See, e.g., Fathers & Daughters Nev., LLC v. Lingfu Zhang*, 2018 WL 3023089, at *5 (D. Or. June 18, 2018).

Further, attorney's fees, including work performed by paralegals and law clerks, may not be recovered for tasks that are clerical in nature. *See Missouri v. Jenkins ex rel. Agyei*, 491 U.S. 274, 288 n.10 (1989). "Courts consider tasks to be clerical, and thus not compensable in an attorney fee award, if they involve 'filing motions with the court, filling out and printing documents, preparing affidavits and drafting certificates of service, organizing files, calendaring dates, rescheduling depositions, and sending documents.'" *Goldingay v. Progressive Cas. Ins.*, 2019 WL 852992, at *7 (D. Or. Feb. 22, 2019) (quoting *Sterling Sav. Bank v. Sequoia Crossing, LLC*, 2010 WL 3210855, at *7 (D. Or. Aug. 11, 2010)).

After determining the number of hours reasonably spent, the district court then calculates the reasonable hourly rates for the attorneys and paralegals whose work comprise the reasonable number of hours. This calculation yields the lodestar amount. For this purpose, the "'prevailing market rates in the relevant community' set the reasonable hourly rate." *Gonzalez*, 729 F.3d at 1205 (quoting *Dang v. Cross*, 422 F.3d 800, 813 (9th Cir. 2005)). "Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits." *Id.* (quoting *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010)). Within this geographic community, the district court should consider the experience, skill, and reputation of the attorneys or paralegals involved. *Id.* at 1205-06.

Typically, "[a]ffidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). In addition, courts in this district have the benefit of several billing rate surveys. One is the Oregon State Bar 2022 Economic Survey ("OSB 2022 Survey"), which contains data on attorney billing rates based on type of practice, geographic area of practice, and years of practice. *See* https://www.osbar.org/_docs/resources/Econsurveys/22EconomicSurvey.pdf (last visited on May 29, 2025).

There is a strong presumption that the fee arrived at through the lodestar calculation is a reasonable fee. *Perdue*, 559 U.S. at 552. A district court may, however, adjust the lodestar amount in "rare" and "exceptional" cases, such as when a particular factor bearing on the reasonableness of the attorney's fee is not adequately taken into account in the lodestar calculation.[4] *See id.* at 552-54 (finding that, in certain circumstances, the superior performance of

---

[4] Factors that may be relevant to the reasonableness of a fee include:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, . . . [(6)] time limitations imposed by the client or the circumstances, [(7)] the amount involved and the results obtained, [(8)] the experience, reputation, and ability of the attorneys, [(9)] the "undesirability" of the case, [(10)] the nature and length of the professional relationship with the client, and [(11)] awards in similar cases.

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), *abrogated on other grounds by City of Burlington v. Dague*, 505 U.S. 557 (1992). Based on subsequent case law, a twelfth factor identified in *Kerr*, the fixed or contingent nature of the fee, is no longer a valid factor to

counsel may not be adequately accounted for in the lodestar calculation); *Cunningham v. County of Los Angeles*, 879 F.2d 481, 488 (9th Cir. 1988) (finding that although in ordinary cases the "results obtained" factor is deemed adequately accounted for in the lodestar calculation, it may serve as a basis to adjust the lodestar when "an attorney's *reasonable* expenditure of time on a case [is not] commensurate with the fees to which he [or she] is entitled" (emphasis in original)).

### b. Hourly Rates

In calculating the lodestar, Class Counsel set their hourly rates at or below the 95th percentile rate for downtown Portland attorneys from the 2022 OSB Economic Survey. The Court analyzes the reasonableness of these rates, but also notes that Class Counsel is recovering only about half of these rates because their lodestar is about twice the requested fee award.

For law students,[5] Class Counsel seeks rates of $200 per hour, which is less than the median rate of $300 and the mean rate of $310 in the 2022 OSB Economic Survey for attorneys with 0 to 3 years of experience working in the downtown Portland area. These rates are reasonable. *See Wyatt B. v. Kotek*, 2024 WL 4867082, at *9 (D. Or. Nov. 22, 2024) (awarding rates of $250 per hour, the statewide median in the 2022 OSB Economic Survey, for law clerks).

For attorneys with 0 to 3 years of experience, Class Counsel seek rates of $300 per hour, which is equal to the median rate in the 2022 OSB Economic Survey. For attorneys with 10 to 15 years of experience, Class Counsel seeks rates of approximately $600 per hour. The 95th percentile for attorneys with 10 to 12 years of experience is $567, and the 95th percentile for

_____

consider in determining reasonable attorney's fees. *See In re Bluetooth Headset*, 654 F.3d at 942 n.7.

[5] It is well established that "[t]ime spent by law clerks, even though they are not attorneys, is compensable." *League of Wilderness Defs./Blue Mountains Biodiversity Project v. U.S. Forest Serv.*, 2014 WL 3546858, at *15 (D. Or. July 15, 2014) (citing *Jenkins*, 491 U.S. at 285 (1989), and *Nadarajah v. Holder*, 569 F.3d 906, 918 (9th Cir. 2009)).

attorneys with 13 to 15 years of experience is $733. For attorneys with more than 30 years of

experience, Class Counsel seek rates of $798, which is equal to the 95th percentile from the 2022

OSB Economic Survey. Courts in this district often award rates at the 95th percentile where

counsel has sufficient specialization and expertise and the case is complex. *See, e.g.*, *Demmings*

*v. KKW Trucking, Inc.*, 2018 WL 4495461, at *16 (D. Or. Sept. 19, 2018); *Wilkens v.*

*Edwards*, 2016 WL 1271663, at *2 (D. Or. Mar. 29, 2016); *United States v. W. Radio Servs.*

*Co.*, 2014 WL 1281050, at *5 (D. Or. Mar. 27, 2014) (awarding rates at the 95th percentile

and 12 percent more than the 95th percentile), *aff'd sub nom. United States v. W. Radio Servs.*

*Co., Inc.*, 671 F. App'x 460 (9th Cir. 2016). Based on the complexity of this case and Class

Counsel's experience, Class Counsel's requested rates are reasonable.

### c. Number of Hours

Class Counsel seeks to recover for 2,978 hours spent on this litigation. The Court has

reviewed Class Counsel's submitted billing records (ECF 92-1, ECF 94-1) and has

identified 13.4 hours of time billed for clerical tasks or vague entries. The Court disallows these

hours. Even with this reduction, however, Class Counsel's lodestar is still well above the

requested fee award of $525,000. Accordingly, the Court awards Class Counsel $525,000 in

attorney's fees.

### 3. Costs

Class Counsel also seeks recovery of $29,782[6] in litigation costs, including filing fees,

court reporting and transcript fees, and mediation fees. These costs are expenses reasonably

incurred in connection with this litigation and are not excessive in the context of the case and the

---

[6] The declarations that set forth these costs list costs of $13,121.22 for Sugerman Dahab (ECF 92-2), $16,875 for Terrell Marshall (ECF 94 ¶ 33), and $407.21 for Schlanger Law Group (ECF 95 ¶ 49). Although these amounts total $30,403.43, Class Counsel seeks only $29,782.

result achieved. Accordingly, the Court grants Class Counsel its requested costs in the amount of $29,782.

**CONCLUSION**

The Court GRANTS Plaintiff's unopposed Motion for Final Approval of Class Action Settlement, ECF 97. The Court also GRANTS Plaintiff's unopposed Motion for Attorney Fees, Costs, and Service Award, ECF 91. The Court awards Class Counsel $525,000 in attorney's fees and $29,782 in costs. The Court further approves a service award in the amount of $10,000 to Plaintiff.

**IT IS SO ORDERED**.

DATED this 10th day of June, 2025.

Michael H. Simon
United States District Judge